No. 26-2190
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ASHLEY GUILLARD
Appellant
v.
REBECCA SCOFIELD
Appellee

---

On Appeal From The United States District Court For The District of Idaho
Case No. 22-CV-521-REP
Chief U.S. Magistrate Judge Raymond E. Patricco

APPELLANT'S PRO-SE OPENING BRIEF

Ashley Guillard
Pro-Se Appellant
3262 Westheimer Rd 942
Houston Texas 77098
337.372.3181
msashleyjt@gmail.com

## INTRODUCTION

Appellant Ashley Guillard appeals from the trial courts erroneous grant of summary judgment for two claims of defamation in favor of Plaintiff-Appellee Rebecca Scofield. The lower court misapplied Idaho defamation laws, ignored material facts showing Guillard did not act with malicious intent, and erroneously attributed Guillard's defense and belief that she is telling the substantial truth as bad faith. Judge Patricco also abused the Courts discretion by referring to Guillard's spiritual practice, beliefs and abilities as implausible, and rendered several legally insufficient judgments that infringed upon Guillard's right to due process. The United States Court Of Appeals for the Ninth Circuit should reverse the lower courts judgment and dismiss the Plaintiff's case with prejudice. There are mixed questions. Therefore, Guillard requests a De Novo Standard of Review from the Ninth Circuit.

1

## JURISDICTIONAL STATEMENT

The United States District Court For The District of Idaho claims jurisdiction due to diversity of citizenship 28 U.S. Code § 1332(a)(3). The Plaintiff Rebecca Scofield is a resident of Idaho, Defendant Ashley Guillard is a resident of Texas and the amount in controversy claims to be over $75,000. The United States Court Of Appeals for the Ninth Circuit has jurisdiction under 28 U.S.C. § 1291. Guillard timely appealed by filing a notice of appeal within 30 days of the district court's order of March 5, 2026.

## ISSUES PRESENTED

**Orders DKT. 59 & DKT. 89**
Whether the district court erred in claiming subject matter jurisdiction?

Whether the district court erred in claiming personal jurisdiction?

Whether the district court erred in claiming the proper venue?

Whether the district court erred in denying Guillard judicial privilege?

**Order - Summary Judgment – DKT. 74 AND DKT. 96**
Whether the district court erred in granting Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. 63)?

Whether the district court erred in granting Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64)?

**Order- Judgment – DKT. 149 & DKT. 169**
Whether the District Court violated Guillard's right to due process during voir dire?

Whether the district court erred in granting Plaintiff's Motion For Attorney's Fees (DKT. 151)?

## STATEMENT OF THE CASE

On November 13th, 2022, four University of Idaho students were murdered near campus in Moscow Idaho. With no arrests at the time, on November 22, 2022, A community member asked Ashley Guillard on TikTok to conduct tarot readings on the murders to get information on who killed the students and why. At the time Guillard used her Tik-Tok platform to use her spiritual

gifts, tarot cards, oracle cards and public information to solve mysterious deaths. By November 23rd, 2022, Guillard began conducting tarot and oracle card readings (readings) on who, what, when, where, and why the murders occurred. She discovered, through the readings that multiple people were involved with the murders but primarily executed by a student and a teacher. The spiritual readings also revealed the motive: that one of the students had a relationship with Plaintiff Rebecca Scofield and that Scofield ordered the murder of the four students. It also said that the murders were committed by an ex-boyfriend of victim Kaylee Goncalves. Guillard posted videos on Tik-Tok revealing what her tarot and oracle card readings revealed. She also sent tips with the information she gathered from her tarot and oracle card readings to the FBI Tipline.

Guillard received 2 demand letters to cease and desist content regarding Professor Scofield and to retract her statements on December 12, 2022 by email. Guillard responded on social media that she did not have to cease and desist her content because she is telling the truth and protected by the Substantial Truth Doctrine of the 1st Amendment of the United States Constitution. On December 21, 2022, Scofield filed a Complaint with 2 claims for Assault Libel & Slander, in Federal District Court for the District of Idaho under diversity jurisdiction; claiming over $75,000 in damages.

On December 30, 2022 Bryan Kohberger was arrested for the murder of the four University of Idaho students. An Idaho judge issued a non-dissemination order in the murder case of the four University of Idaho students, limiting the information that can be shared with the public or media. Going forward most of the documents, evidence and information regarding the homicides were sealed and hidden from the public.

Guillard was served with the lawsuit but did not respond to the Complaint by the deadline due to being overwhelmed with stress due to being responsible to help a close family member with

3

a terminal illness, being pro-se on another unrelated civil case and more. Scofield motioned for an entry of default on January 19, 2023. Guillard filed an Answer to the Complaint and a motion for relief of the default entry on February 16, 2023.

On February 17, 2023, Scofield filed a Motion for a Default Judgment (DKT. 10). The motion for a default judgment sought "at least $1,863,304" alleging Guillard's "false statements" caused the following: 1) Scofield's promotions, leadership capabilities, and salary increases at the University of Idaho to be jeopardized. 2) Jeopardized her publication of book manuscripts, book chapters and articles that were pending review. 3) Jeopardized Scofield's ability to collaborate with co-authors. 4) Limited Scofield's ability to perform new studies and new work regarding LGBTQ populations. 5) Caused Scofield severe mental distress due to receiving "hate mail" from "anti-education groups" who oppose her work on the LGBTQ community at the University of Idaho. On April 26, 2023, the Court denied Scofield's Motion for a Default Judgment of $1,863,304 or more (DKT. 18) and granted Scofield's Motion to strike Guillard's answer. The Court ordered Guillard to refile a response to the Complaint.

Guillard filed an answer to the Complaint with Counterclaims against Scofield and her Attorneys on May 16, 2026. Guillard denied the lower court's jurisdiction and venue pursuant to U.S.C. § 1391 and 28 U.S.C. § 1404. Guillard's affirmative defenses were the following: Substantial Truth Doctrine and the Incremental Harm Doctrine pursuant to Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991); qualified privilege; freedom of expression guaranteed by the First Amendment of the Constitution of the United States of America; as well as fraud, illegality pursuant to 18 U.S.C. §1621, and comparative negligence. Guillard filed 11 counter-claims against Scofield and her Attorneys. She filed two counter-claims for defamation, a third counterclaim pursuant to 42 U.S. Code § 1985 (2) Obstructing Justice- Conspiracy To Interfere

With The Right To Due Process And The Freedom Of Speech, a fourth counterclaim based on 42 U.S. CODE § 1986, a fifth counterclaim pursuant to 42 U.S.C. Sec 1983 Civil Action For Deprivation Of The Right To Due Process, a sixth and seventh counterclaim for malicious prosecution frivolous claim pursuant to Neitze v. Williams, 490 U.S. 319, 325 (1989), an eighth and ninth counterclaim pursuant to 42 U.S. Code § 1985 (2) and 42 U.S. Code § 1986 and a tenth and eleventh counterclaim intentional infliction of emotion distress. Scofield filed a Motion to Dismiss Guillard's counterclaims on June 6, 2023 and a motion to quash Guillard's claims against Scofield's attorney's on June 13, 2023. The District Court dismissed Guillard's counterclaims with prejudice on August 8, 2023.

On January 12, 2024, Scofield filed a Motion for Partial Summary Judgment (DKT. 63) and a Motion for Leave to Amend the Complaint to add Punitive Damages (DKT. 64). The Court granted both motions (DKT. 74). On March 15, 2025, Guillard filed a Motion for Reconsideration of Docket 74 based on newly received evidence pursuant to FRCP Rule 60(b)(2). The Court denied the motion for reconsideration and ordered to proceed to trial solely on damages (DKT. 96). February 5, 2026 Guillard filed a Motion to Dismiss for Lack of Jurisdiction (DKT. 117). February 6, 2026 Guillard filed a Motion to Continue to allow time for an interlocutory appeal (DKT. 120). February 15, 2026 the District Court denied Guillard's motion to dismiss and motion to continue (DKT. 124).

February 24, 2026, to February 27, 2026, the Jury Trial was held on damages only. During voir dire Judge Patricco allowed two jurors who admitted personal belief biases against Guillard (#13 and #3) and a third juror (#5) whose law firm is co-counsel with the Plaintiff's attorneys, Wendy Olson at Stoel Rives, LLP., in an active case. Guillard challenged two jurors for cause. Judge Patricco denied Guillard's motion to challenge Juror number 5 and Juror number 13.

5

Ultimately allowing a juror who admitted religious bias against Guillard to serve on the jury and a juror whose firm currently works as co-counsel with the Plaintiff's Attorney Wendy Olson. During the 3rd day of trial, February 26, 2026, Juror number 5 wrote a letter to the judge implying that a large verdict would be rendered in Scofield's favor, before Guillard presented her case. Guillard moved to remove Juror #5. First Scofield argued to keep Juror #5 but ultimately agreed that #5 should be removed. The motion to remove Juror #5 was granted. February 27, 2026 Guillard motioned to remove Juror #13 due to inappropriate interaction with Scofield in addition to religious bias, and having prior knowledge about the case (DKT. 142). The motion was denied. Despite not having any evidence to support it, the jury rendered a verdict in favor of Rebecca Scofield in the amount of 2.5 million in compensatory damages and 7.5 million in punitive damages. Guillard filed a Notice Of Appeal (DKT. 154) on April 6, 2026. Guillard now files this opening brief, pro-se.

## SUMMARY OF THE ARGUMENT

First Guillard argues that Scofield lacks subject matter jurisdiction because she did not have damages amounting to $75,000 at the time of the complaint (DKT. 1). For similar reasons Guillard also argues that the Court lacks personal jurisdiction, and is not the proper venue. She also argues that Guillard is entitled to judicial impartiality/qualified immunity. Therefore, DKT. 50, and DKT. 117, motions to dismiss, should have been granted. Secondly, Guillard also argues that the district court erred in granting Plaintiff's Amended Motion for Partial Summary Judgment. Lastly, Guillard argues that her right to due process was violated during voir dire and therefore, the entire trial and judgment is void.

## ARGUMENT
**I.      Order (DKT. 59) on Motion to Dismiss (DKT. 50) & DKT. 89 & DKT. 124**

6

**A.**    **Whether the district court erred in claiming subject matter jurisdiction? Scofield Did Not Suffer $75,000 in Damages.**

Guillard argued that the Court lacks subject matter jurisdiction because Scofield does not have any damages (DKT 50). Scofield fabricated damages that does not exist. Therefore, lacks subject matter jurisdiction under 28 U.S.C. § 1332 which requires $75,000 in damages. To determine whether the amount in controversy is met, "[t]he rule…is that… the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).[1] The court looks at the circumstances "at the time the complaint is filed." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004). At the time of the complaint and post complaint Plaintiff Rebecca Scofield did not suffer any damages. In Dkt. 10 the Plaintiff falsely claimed damages equitable to $1,863,304 for "jeopardizing Rebecca Scofield's employment and advancement at the University of Idaho, limiting Scofield's ability to perform new studies and produce new work, and severe mental distress for worries that an unknown made up person may 'take violent action'." They also motioned for the Court "to compensate Professor Scofield for these harms, she asks the Court to award her at least $863,304 for damages to her personal and professional reputation (the equivalent of 10 years of her current compensation at the University of Idaho). She also asks the Court to award her at least $1 million for pain and suffering related to her mental distress."

In DKT. 50, DKT. 117 and repeatedly through-out the litigation Guillard argued that Scofield, did not lose her job, did not lose promotions, did not suffer reputational hard, and therefore could not have pain and suffering damages. Quoting Scofield's GoFundMe donations Guillard claimed that Scofield increased in popularity. Scofield did not experience any financial

---

[1] See also *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021) (emphasis in original) *(cleaned up) (DKT. 59)*

7

or reputational damages. Her Go Fund Me campaign (DKT. 50 Exhibit A) raised nearly $20,000 with over three hundred donations. Jamal Lyksett donated $100 commenting "we are all with you." Celeste Miller donated $50 commenting "The professor's case enhances justice for us all." Arthur Patton-Hock donated $175 commenting "Becca: you're a hero in so many ways." As exemplified by her GoFundMe fundraiser Scofield's personal and professional reputation has not been damaged. Nor was she at threat to lose her job.

In DKT. 59 the Court decided that it has subject matter jurisdiction. Stating The "legal certainty" test permits a district court to dismiss the case for lack of jurisdiction only if it is obvious on the face of the complaint that the suit cannot involve the necessary amount. Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010). This standard "makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." Naffe v. Frey, 789 F.3d 1030, 1040 (9th Cir. 2015) (cleaned up). To be sure, just three situations meet the legal certainty standard: (i) "when the terms of a contract limit the plaintiff's possible recovery"; (ii) "when a specific rule of law or measure of damages limits the amount of damages recoverable"; and (iii) "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." Id. (cleaned up). Defendant's arguments most closely align with the third scenario. Importantly, however, those arguments only represent challenges to what Plaintiff may ultimately recover. They do not involve any objective, upfront criticism of Plaintiff's claim to damages or, for that matter, the amount of those damages. As a result, Defendant's arguments represent an attempt to do what the Ninth Circuit has prohibited: "smuggle in merits-based arguments into the jurisdictional inquiry[.]" Greene v. Harley-Davidson, Inc., 965 F.3d 767, 774 (9th Cir. 2020); see also Arias v.

Residence Inn by Marriott, 936 F.3d 920, 928 (9th Cir. 2019) ("[T]he strength of any defenses indicates the likelihood of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation. Arias's argument conflates the amount in controversy with the amount of damages ultimately recoverable") (emphasis in original, cleaned up); Geographic Expeditions, 599 F.3d at 1108 (the existence of a valid defense to a claim "does not eliminate federal jurisdiction[.]"). As the Ninth Circuit has cautioned, "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." Geographic Expeditions, 599 F.3d at 1108. Here, Defendant's TikTok videos accuse Plaintiff of not only having an improper relationship with a student, but then masterminding the murder of four students to keep that relationship a secret. Plaintiff alleges that these videos are defamatory and that she suffered actual injuries to her life, career, and mental health as a result. See Opp. to MTD at 3-4 (Dkt. 51). Without weighing in on the merits of these claims, it is not unreasonable for Plaintiff to seek damages that compensate her for these alleged injuries. Nor is it inconceivable that such damages exceed $75,000 depending on the nature and extent of those alleged injuries. That the parties dispute the facts informing these aspects of Plaintiff's case are not resolved here, but instead must be determined by the trier-of-fact based upon the evidence. As such, the Court cannot find to a "legal certainty" that Plaintiff's claims against Defendant are really for less than $75,000 and simply a procedural maneuver to falsely obtain federal jurisdiction. Defendant's Motion is denied in this respect.

In DKT. 117 Guillard also added the fact that It is medically and legally impossible for Scofield to get post-traumatic stress disorder from defamatory statements. First defamation is not a traumatic event. It does not meet the diagnostic criteria of exposure to actual or threatened death,

9

serious injury, or sexual violence pursuant to the Diagnostic And Statistical Manual Of Mental Disorders (DSM-5). Additionally, pursuant to the American Psychiatric Association, Scofield cannot get PTSD from electronic media or Tik-Tok videos. Pursuant to ID Code § 72-451 (2025), Scofield's PTSD diagnosis is not a proper medical diagnosis and does not meet the criteria for compensation.

Finally, During trial Sean Quinlan, the Dean of the College of Letters, Arts, and Social Sciences, testified under oath as a witness for Scofield. He testified that he is Professor Rebecca Scofield's boss. He also testified that Scofield did not lose any job opportunities nor promotions. He testified that he did not believe Guillard's statements about Scofield's involvement with a student nor the murders. In fact, he testified that Scofield received satisfactory job ratings, was promoted, and received pay increases several times since Guillard's statements. Rebecca Scofield's lies about financial professional damages of over $1,000,000 through-out the litigation, from 2022-2025 and during trial in 2026 were perjurious. Additionally, Scofield lied under oath about being investigated by the University of Idaho due to Guillard's statements. During trial Kim Rytter, the General Counsel and Chief Compliance Officer for the University of Idaho, testified as a witness called by Rebecca Scofield. He testified that Scofield was not investigated.

In conclusion, the facts prove that Scofield fabricated damages and Scofield does not have $75,000 in actual damages: 1) Scofield claimed professional damages. The evidence proved that Scofield was not damaged professionally she was promoted. 2) Scofield claimed reputational harm. Instead the evidence proved she was not investigated at work because the statements Guillard made were not believed. See Kim Ritter's testimony. Additionally she had the support of students, her family and friends, and the general public. See GoFundme Exhibit and the testimony of Sean Quinlan, Scofield's boss. 3) Scofield claimed post-traumatic stress disorder, nerve

10

damage, and diabetes from the Tik-Tok videos except none of those claims are medically supported.

Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. Margoles v. Johns, 660 F.2d 291 (7th Cir. 1981) cert. denied; Klugh v. U.S., 620 F. Süpp. 892 (D.S.C. 1985); Fed. Rules Civ. Proc., Rule 60(b)(4) and 28 U.S.C... A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. FRCP Rule 60(b)(4) provides that the court may relieve a party from a final judgment or order and relief may be granted for circumstances under which a judgment is void. "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." Williamson V. Berry, 8 How. 945, 540 12 L. Ed. 1170, 1189 (1850). A party affected by void judicial action need not appeal pursuant to State ex rel. Latty, 907 S.W.2d at 486. "A void order can be challenged in any court" Old Wayne Mut. L. Assoc. V. Mcdonough, 204 U. S. 8,27 S. Ct. 236 (1907). "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside, It may be impeached in any action direct or collateral.' Holder v. Scott, 396 S.W.2d 906, (Tex. Civ. App., Texarkana, 1965, writ ref., n.r.e.). In Griffen v. Griffen, 327 U.S. 220, 66 S. Ct. 556, 90 L. Ed. 635 a pro se litigant won his case in the Supreme Court who stated: "A void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001), Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring).

11

At the beginning of the Complaint (DKT. 1), did the District Court have subject matter jurisdiction?

**B.      Whether the district court erred in claiming the proper venue?**

In DKT. 59 the District Court claimed to be the proper venue. Stating: Generally, venue is proper, and an action may be brought, in (i) the district in which any defendant resides; (ii) a district in which a substantial part of the events or omissions giving rise to the claim occurred; or (iii) if neither is available, then any district in which a defendant is subject to personal jurisdiction. 28 U.S.C. §§ 1391(b)(1)-(3). Plaintiff alleges that venue is proper in this district under section 1391(b)(2) because "a substantial part of the events giving rise to the claims" occurred in Idaho. Compl. at ¶ 4 (Dkt. 1). Defendant disagrees. Defendant argues that, since Plaintiff "claims to not have killed the students, the only event that gave rise to the civil action is the alleged defamation that occurred on social media; published mostly in Texas and accessed in several states." Mem. ISO MTD at 9 (Dkt. 50-1). She instead submits that proper venue (assuming subject matter jurisdiction) is in the Federal\ District Court for the Southern District of Texas and that, under 28 U.S.C. § 1406(a), the action should either be dismissed outright or transferred there. Id. at 9-10, 14 "The Ninth Circuit has ruled that when determining where a substantial part of the events or omissions giving rise to the claim occurred 'in a tort action, the locus of the injury [is] a relevant factor.'" Rodgers v. Color Street LLC, 2023 WL 4627909, at *5 (D. Idaho 2023) (quoting Myers v. Bennett L. Offices, 238 F.3d 1068, 1076 (9th Cir. 2001)). Here, owing to Defendant's alleged defamatory statements, Plaintiff claims to have suffered damage to her reputation, career, and mental health – all occurring in Idaho. Compl. at 2, 8-11 (Dkt. 1); see also Opp. to MTD at 7 (Dkt. 51).

Considering the Plaintiff lied about damages to her career, mental health and reputation, was the United States District Court for the District of Idaho the proper venue?

12

**C. Whether the district court erred in denying Guillard judicial privilege? DKT. 59**

The District Court order stated: Defendant lastly argues that Plaintiff's defamation claims against her should be dismissed because (i) Idaho's judicial privilege covers the statements made in her TikTok videos, and (ii) Plaintiff has not adequately stated a claim for relief. Mem. ISO MTD at 14-15 (Dkt. 50-1). First, Idaho's judicial privilege immunizes a party from civil liability for statements made in the course of judicial proceedings. See Berian v. Berberian, 483 P.3d 937, 946 (Idaho 2020) ("Idaho has long recognized that defamatory statements made in the course of a judicial proceeding are absolutely privileged, even if made with malicious intent or knowledge of their falsity. The purpose of the judicial privilege is to keep the paths leading to the ascertainment of truth as free and unobstructed as possible.") (internal quotation marks and citations omitted). This privilege sets a low bar, requiring only that the defamatory statement (i) be made in the course of a proceeding, and (ii) have "a reasonable relation the cause of action of that proceeding." Dickinson Frozen Foods, Inc. v. J.R. Simplot Co., 434 P.3d 1275, 1284 (Idaho 2019). To be clear, a judicial proceeding in this context is not limited to trials, but includes "every proceeding of a judicial nature before a court or official clothed with judicial or quasi-judicial power." Malmin v. Engler, 864 P.2d 179, 182 (Idaho Ct. App. 1993) (quoting Richeson v. Kessler, 255 P.2d 707, 709 (Idaho 1953)).

Defendant's TikTok videos were never made in any proceeding that can be understood as judicial in nature. And while statements made to law enforcement may be subject to a qualified privilege, Berian, 483 P.3d at 946-48, Defendant's TikTok videos existed independent of any criminal investigation into the murder of the four University of Idaho students. That is, the allegedly-defamatory statements embedded within Defendant's TikTok videos were not relayed just to law enforcement as part of a discrete criminal investigation into the murders. Instead, they were effectively disseminated world-wide. That statements may have also been communicated to

13

law enforcement does not then immunize hem, particularly when no charges have ever been brought against Plaintiff.

The Court errs in the facts. First Defendant Ashley Guillard's statements about Rebecca Scofield's alleged involvement in the murder of the four University of Idaho students were made during judicial proceedings; specifically, during the investigation of the murders. Although Ashley Guillard is not a party in the criminal case, she sent her findings to the FBI tip line, as a witness to help solve the case. Therein, her statements easily meet the standard of judicial privilege, and the Plaintiff fails to state a defamation claim. Additionally pursuant to Berian v. Berberian, 483 P.3d 937, 946 (Idaho 2020) statements to law enforcement for the purpose of initiating criminal proceedings are entitled to a qualified privilege for all torts except malicious prosecution. Therefore, the Defendant Ashley Guillard's statements on social media are also privileged due to the reasonable relation to the pending criminal case of the murder of the four University of Idaho students pursuant to Berian v. Berberian, 483 P.3d 937, 946 (Idaho 2020).

In conclusion, Guillard shared the message from her tarot and oracle card readings to law enforcement in a tip. She also shared it with the public on social media during the criminal investigation. Moscow Idaho Law enforcement also requested assistance from those on social media. Is qualified immunity lost because the allegations were shared with the public? Is secrecy required to obtain qualified immunity?

**II.     Order – Summary Judgment – DKT. 74 AND DKT. 96: Whether the district court erred in granting Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. 63)?**

**A.     The Summary Judgment is in Violation of the First Amendment [2]**
First, the statements Guillard were based on her spiritual beliefs and practices. In Cantwell

v. Connecticut (1940), the Court explained that the Religion Clauses of the First Amendment

---

[2] Excerpt from DKT. 77 Memorandum in Support

embrace two concepts, the freedom to believe and freedom to act. By ruling that the messages Guillard received and promulgated by way of tarot and oracle card readings are not true the Court takes a stance on the truth or falsity of Guillard's spiritual belief and practice. This is barred by the Establishment Clause which prohibits the government from making laws "respecting (or disrespecting) an establishment of religion or prohibiting the free exercise thereof." By deeming Guillard liable for defamation due to acting on her spiritual beliefs and practices, the Court regulates punishment on Guillard for acting on her spiritual beliefs. By allowing the Complaint to be amended to add punitive damages, the Court allows for egregious punishment of Guillard for acting on her spiritual beliefs and practices and to prevent its free exercise. The Court specifically stated that punitive damages are used to deter similar conduct in the future (see Dkt. 74 pg. 7).

The Court rules against the First Amendment by issuing an order allowing for punitive damages to prevent Guillard from freely exercising her spiritual practice in the future. Second, the Court stated the statements Guillard made were "bad acts" because "…those statements were based only on Defendant's spiritual intuition about the murders; there was never any objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did (Dkt. 74)." In other words, the Court determined Guillard's acts based on her spiritual beliefs and practices as "bad acts" because she did not have physical evidence to prove that the information gained from her spiritual practice was true. By requiring that the messages from Guillard's spiritual practice be "objectively proven" it singles the spiritual practice out from other spiritual or religious practices and causes burdensome treatment. "The Free Exercise Clause commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of it practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures (Church of the Lukumi-Babalu Aye, Inc.

15

v. City of Hialeah 508 U.S. 520 (1993))." Accordingly, "legislators may not devise mechanisms, overt or disguised to persecute or oppress a religion or its practice." Under the constitution, a law that is not neutral, but targets a specific action, and that does not apply generally to all people, but targets a specific group, must be justified by a compelling governmental interest, and narrowly tailored to advance that interest. Id. The Court requiring that Guillard's spiritual practice in the form of a tarot and oracle reading be "objectively proven" or to be punishable by defamation laws and punitive damages, singles out the spiritual practice from all other spiritual practices or lack thereof, that do not require "objective proof" or evidence to be freely exercised. Additionally, the Court made no inference to any compelling government interest to justify oppression of the spiritual practice and subsequent acts. The United States Constitution provides specific protections for the exercise of religious freedoms and due process rights regarding fair and impartial legal proceedings. Collectively, the Free Exercise Clause and the Establishment Clause have historically served to ensure that the government is prohibited from unduly restricting the religious practices of those individuals who desire to adhere to and practice one of their own volitions. Guillard cannot be punished for believing in a spiritual practice, its messages, nor can she be punished for acting on that belief.

**B.      The Court Lacks Jurisdiction of the Case of the Murder of the Four Students**

Civil laws are in place to resolve disputes between individual parties, while criminal law deals with offenses that have occurred against the government or state. Federal District Court has limited jurisdiction with legal authority restricted to specific subjects, cases, or persons and can only hear cases that fall both within the scope defined by the Constitution in Article III Section 2 and Congressional statutes (see 28 U.S.C. §1251, §1253, §1331, §1332). A civil case could prompt a criminal investigation if the evidence gathered indicates that a law has been broken and a crime committed. However, a civil case doesn't turn criminal because they are two separate proceedings.

"Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." Williamson v. Berry, 49 U.S. 495 (1850). In Dkt. 74 the Court ruled that Scofield proved that she did not order the murder of the four students. However, determination of the innocence or guilt of an alleged murderer in Idaho is within the jurisdiction of the State criminal courts, not Federal District Civil Court. Although at the time of the filing of the Complaint Scofield had not been tried nor investigated for the murder of the four students, the Court cannot use the civil tribunal process to decide Scofield's innocent or guilty of murder. Nor is it in this Courts authority to rule Mr. Kohberger guilty of murder. It is beyond the constituted authority of the Court.

## C. The Plaintiff Does Not Have a Valid Defamation Claim

Pursuant to Idaho Jury Instruction 4.82, in order to prove a claim of defamation in Idaho, the plaintiff has the burden of proving each of the following elements: 1. The defendant communicated information concerning the plaintiff to others; and 2. The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and 3. The information was false; and 4. The defendant knew it was false, or reasonably should have known that it was false; and 5. The plaintiff suffered actual injury because of the defamation; and 6. The amount of damages suffered by the plaintiff. See also See New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and Time Inc. v. Hill, 385 U.S. 411 (1967). Plaintiff Scofield fails to prove elements 3, 4, 5, and 6 of the defamation claims. First, to succeed in a defamation claim, the Plaintiff must prove that the alleged defamatory statements are false by a preponderance of the evidence. See Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). Scofield has not proven by a preponderance of evidence that she did not order the murder of the four

17

students; nor has she produced any evidence that she did not have an affair with victim Kaylee Goncalves. Instead, Scofield's evidence supports that she was not investigated by UIdaho; nor was she investigated by the Moscow Police Department as of December 27, 2022. Erroneously going beyond its constituted authority, the Court also considered the arrest and charge of Mr. Kohberger in determining Scofield's innocence of murder (Dkt. 74 pg. 18). However, as of the date of the filing of the Complaint (Dkt. 1), December 21, 2022, there were no arrests for the murder of the four students. Additionally, as of the date of the Order (Dkt. 74), June 6, 2024, Mr. Kohberger is legally presumed innocent, the criminal trial is pending, a gag order is in place, and most of the evidence regarding his criminal case has been sealed. The charge of an initial suspect does not prove guilt, nor does it prove there were no co-conspirators. Additionally, another suspect or coconspirators may be revealed by evidence during Latah County criminal proceedings which are still ongoing. Scofield has not proven that she did not cause the murder of the four students. The Plaintiff fails to meet this element of a defamation claim.

Second, a valid defamation claim in Idaho requires that the defendant knew the statements were false, or reasonably should have known that the statements were false. Id. The Plaintiff has not proven and has no evidence that the Defendant made knowingly false statements. The Defendant maintains that she believes in her claircognizant abilities as well as spiritual practices, such as oracle card readings and tarot readings. Guillard provided evidence that other tarot readings she conducted went on to be objectively true (see Dkt. 65 pgs. 2-3). Guillard also provided evidence that she believes in the accuracy of her tarot and oracle card readings (see Dkt. 65 pg. 13). The Plaintiff fails to meet this element of a defamation claim.

Third, the plaintiff has not proven that she suffered actual injury because of the Defendants statements. Instead, she motioned for punitive damages to overcompensate for the fact that she did

18

not suffer any actual damages from Guillard's statements. The Supreme Court held in Birdsall v. Coolidge, 93 U.S. 64 (1876) that the phrases "compensatory damages" and "actual damages" are identical. The amount awarded is based on the proven harm, loss, or injury suffered by the plaintiff. The Plaintiff did not lose her job, family, friends, or support. Instead, she gained support and popularity (see Dkt. 50 pg. 6). Even if the statements were false, the Plaintiff does not have a valid defamation claim because she did not suffer any losses. Lastly, damages in any amount suffered by the plaintiff have not been proven by evidence. The Defendant mentioned the Plaintiff's lack of damages during the motion hearing (Dkt. 73). The Court erroneously disregarded the topic as a matter for the jury. However, it is also a fact in determining a valid defamation claim. The plaintiff has no damages and therefore do not meet the criteria established by Idaho defamation laws.

**D.     The Plaintiff is Not Entitled to Judgment as A Matter of Law**

Under Rule 56, to succeed in a motion for summary judgment, a movant must show 1) that there is no genuine dispute as to any material fact, and 2) that the movant is entitled to judgment as a matter of law. First, the Plaintiff is not entitled to judgment as a matter of law because she does not meet the core elements of a defamation claim. Second, the focus of the Court in proving there is no genuine dispute as to any material fact was largely based on the false precept that the Defendant must prove Scofield ordered the murder of the four students and had an affair with one of the victims. This is not a criminal complaint to prove that Scofield is a murderer. Instead, the Plaintiff must prove that Guillard committed defamation against her by a preponderance of evidence. The Plaintiff has also not met the initial burden of proof of the absence of a genuine dispute required for Summary Judgment. See Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001); Celotex, 477 U.S. at 323.

19

As previously stated, the Plaintiff failed to meet the core elements of a defamation claim. The material facts, affidavits, and evidence do not support that Guillard made false statements about Scofield, that Guillard knew the statements were false and that Scofield suffered damages, and the amount. Guillard provided evidence that she believes in tarot and oracle card readings and that they have proven to be true (see Dkt. 65 pg. 13). Guillard also provided character evidence that she was motivated by purpose (see Dkt. 65 Exhibit A). She also provided evidence that she attempted to help solve the murder by sending a tip to the FBI tip-line (see Dkt. 66 Exhibit A). Additionally, she also provided evidence that Scofield did not suffer reputational harm (see Dkt. 50 Exhibit A). The Court erred in determining that Guillard lacked evidence to defend herself against defamation, because the Court erroneously, unfairly, and unlawfully required the Defendant to prove that Scofield is a murderer with objective evidence. Guillard does not have the prosecutorial authority of the State to investigate, gather evidence and prove murder. Hence, the initial rejection of the subpoena to Meta Platforms, Inc. (Exhibit A). Nor does this Court have jurisdiction to prove Scofield innocent of murder of the four students. The Court made critical errors in the application of the law, and the due process of the Defendant. Thus, the Amended Motion for Partial Summary Judgment and the Motion for Leave to Amend the Complaint to Add Punitive Damages was granted in error. The Plaintiff does not meet any of the elements required under Rule 56. The Order (Dkt. 74) must be reversed entirely.

**E.  The Order Granting Summary Judgment Has False "Statements of Fact"**

First, the order begins by stating that Guillard posted over 100 sensational Tik-Tok (and later You-Tube) videos falsely claiming that Scofield had an affair with one of the victims and ordered the murder of the four students to hide the affair. Guillard did not post 100 Tik-Toks about Scofield. Instead, she posted about nine Tik-Tok videos about Rebecca Scofield with a duration of

20

one-minute or less. Second, the Court made a blatant false statement: Critically, in response, Defendant does not dispute that she communicated statements about Plaintiff to others or that these statements, if false, are defamatory (See Dkt. 74 pg. 13). During the motion hearing on April 16, 2024 (Dkt. 73), the Defendant specifically stated she did not agree that the statements she made about Scofield are defamatory even if the Court found them to be false. This can be proven by reviewing the transcript of the hearing. Judge Raymond E. Patricco either made this critical error on the Court order by mistake or blatantly lied due to his inability to be impartial.

**F.      The Lower Court Violated the Defendant's Right to Tribunal Impartiality**

The Supreme Court has found that the Due Process Clause of the Fifth Amendment imposes on the federal government restrictions that are almost identical to those imposed on the States by the Equal Protection Clause of the Fourteenth Amendment. From the onset of the Complaint, the Court, represented by Chief Magistrate Judge Raymond E. Patricco (Patricco), robbed the Defendant of her right to an impartial tribunal. One of Guillard's affirmative defenses against the defamation alleged in this Complaint is that she was telling the substantial truth. In civil pleadings the standard is the Defendant is presumed not liable until proven liable for damages by a preponderance of evidence. Therefore, the initial presumption is that Guillard was telling the substantial truth until otherwise proven. Due to his personal lack of belief in Guillard's spiritual practices i.e., claircognizance, intuition, tarot card and oracle card readings, Judge Patricco acted in a way that impeded upon Guillard's right to an impartial tribunal. For example, Judge Patricco stated that Guillard's spiritual practices and beliefs are " arguably so outrageous as to be clearly

21

baseless and, thus, implausible" (see Dkt. 49 pg. 9). In Dkt. 74 Patricco deemed Guillard's tarot readings as "improbable inferences" (see Dkt. 74 pg. 20). In Dkt. 74 Patricco deemed Guillard's tarot readings as "irrational" (Dkt. 74 pgs. 19-20). During the hearing (Dkt. 73) Patricco vehemently stated Scofield "can file a lawsuit for defamation" again illegally presuming that the statements Guillard made are false. If the Court was indifferent regarding the plausibility of tarot and oracle card readings the Court would not deem Guillard's conduct "wrong" on its face nor would it make negative statements regarding the plausibility of the practice. If the statements were legally presumed to be true, the Defendant's conduct was not in bad faith. Instead, it is morally sound to seek justice on behalf of murder victims. However, due to Patricco's personal bias, the Court inherently viewed Guillard's acts as wrongful conduct. On Dkt. 74 the Court ruled that Guillard acted with a bad state of mind because she did not believe other people's beliefs over her own spiritual practice and beliefs (see Dkt. 74 pgs. 21-22). The Court stated without evidence and with the Defendants evidence proving the contrary that "These circumstances combine to demonstrate that Defendant's social media postings were primarily self-serving, motivated by online viral attention, and made with an extremely harmful state of mind given the nature of the statements about Plaintiff." Judge Patricco made that false allegation against Guillard, without evidence, due to his inherent personal bias towards her and her spiritual beliefs. Patricco's lack of impartiality and inherent bias regarding Guillard's spiritual practices and its plausibility impeded upon his ability to judge the case without bias. Instead, he sympathized with the Plaintiff bending

22

the law to allow her Complaint. For example, he denied the Defendant's motion to dismiss the defamation claims due to qualified immunity and absolute immunity. Yet granted Scofield's dismissal of the Defendant's defamation counterclaims due to qualified immunity, and absolute immunity (see Dkt. 49 pgs. 10-11 Dkt. comparatively to Dkt. 59 pgs. 22- 23). Additionally, he dismissed the Defendant's counterclaims due to the same bias.

The United States Constitution provides specific protections for the exercise of religious freedoms and due process rights regarding fair and impartial legal proceedings. The First Amendment protects religious freedom, and the Fifth Amendment Due Process Clause constrains the authority of the federal government. However, there are also occasions when simultaneous application or contextual circumstances create conflict, juxtaposing the two freedoms. In this case, Guillard's Constitutional rights as intended by the First and Fifth Amendment were violated due to Judge Patricco's personal bias. Therefore, the judgments within the Complaint are void. Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process Williamson v. Berry, 49 U.S. 541-544 (1850) see also Klugh v. United States, 620 F. Supp. 892 (D.S.C. 1985). A void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring).

**G. The Complaint is Barred by Absolute Privilege and Qualified Privilege**

Law enforcement encourages the reporting of a violent crime. In Texas, failing to report a violent crime or homicide is a misdemeanor. In some states, there are laws against concealing knowledge of a felony crime committed by someone else. Failure to report a serious crime like murder, rape, or arson could potentially lead to criminal charges for obstructing justice or being an accessory after the fact. Citizens may feel a moral obligation to speak up about violent offenses and ensure that justice is served; plagued by guilt or a sense of responsibility for the victim. In those cases, the law encourages the public to speak up. Thousands of social media users gathered to get and share information that would potentially help solve the murder of the four students (see https://www.tiktok.com/search/user?q=Idaho%20four&t=1719119715110) law enforcement specifically asked the public to speak up stating: "Investigators believe someone has information that adds context to what occurred on the night of the murders and continue requesting additional pictures, video, and social media content. " Also stating "Whether you believe it is significant or not, your information might be one of the puzzle pieces that help solve these murders." (See Exhibit C para. 3). The police requested the public's help with sharing information on social media. Id. Therein, Guillard's statements and acts easily meet the standard of absolute privilege, and the Plaintiff fails to state a defamation claim. "Idaho has long recognized that defamatory statements made in the course of a judicial proceeding are absolutely privileged, even if made with malicious intent or knowledge of their falsity." Berian v. Berberian, 168 Idaho 394, 483 P.3d 937, 946 (2020). "The term judicial proceeding is not restricted to trials but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi- judicial power." Id. (quoting Richeson v. Kessler, 73 Idaho 548, 551-52, 255 P.2d 707, 709 (1953)). Additionally, pursuant to Berian v. Berberian (2020) "Accordingly, . . . defamatory statements made by private individuals to law enforcement officials prior to the institution of criminal charges are entitled to a qualified

24

privilege, not an absolute privilege, and this qualified privilege will not apply when the defamatory statements are made with malice." Id., 438 P.3d at 948. Attempting to help solve the murder of the four students in the interest of justice does not amount to malice. Pursuant to Idaho law Guillard's statements regarding the murder of the four students are protected by Qualified Privilege for the statements made prior to criminal proceedings that began December 30, 2022. All Guillard's statements regarding the murder of the four students made after December 30, 2022, are protected by Absolute Privilege. Even if the statements Guillard published were false she is still protected by Qualified Privilege because the statements were not made with malice. The Court erred in granting the Amended Motion for Partial Summary Judgment. The entire Complaint thus fails and must be promptly dismissed.

**H.      Tarot Card and Oracle Card Reading Messages Are Not False Statements of Fact**

A false or fictitious statement or representation is an assertion that is untrue when made or when used, and that is known by the person making it to be untrue. See United States v. Worthington (1987). Guillard made statements are based on her spiritual beliefs. Therefore, her beliefs are not false statements. The Court deems Guillard's statements derived from intuition, tarot cards and oracle card readings as "lay witness testimony" (see Dkt. 75, pg. 19). A lay witness is someone who provides testimony in court based on their direct perceptions or personal experiences concerning the case. Lay witnesses can be individuals who possess knowledge that could shed light on the case's facts. Lay witness testimony based on perception is an opinion, not a statement of fact. Religious beliefs and acts are based on belief and perception, not false statements of fact. Therefore, beliefs cannot be defamatory.

In conclusion, to litigate a defamation claim is it the responsibility of Guillard to prove that Scofield was involved with the murder of the four students or is it the responsibility of Scofield to prove all of the elements of a defamation claim against Guillard? Additionally are spiritual

25

messages capable for being statements of fact capable of defamation? Did the lower Court err in granting summary judgment without evidence that Guillard made an intentional false statement?

**III.     Whether the district court erred in granting Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64)?**

**A.     The Order Granting Punitive Damages Is Against Idaho Law**
The Court, again lacking in judicial impartiality, erroneously granted the Motion for Leave to Amend the Complaint to Add Punitive Damages (Dkt. 74) ruling that Guillard acted with a bad state of mind because she did not believe other people's beliefs over her own spiritual practice. Stating "those statements were based only on Defendant's spiritual intuition about the murders; there was never any objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did." Religious and spiritual practices and beliefs are not required to be "objectively based". The Court cannot punish Guillard for believing spiritual messages because it is not based on evidence. Additionally, Idaho Code § 6-1604 requires that the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious, or outrageous conduct by the party against whom the claim for punitive damages is asserted. Guillard's, belief in spiritual messages, intuition, claircognizance, tarot card readings and oracle card readings does not equate to oppressive, fraudulent, malicious, or outrageous conduct. Guillard believes her spiritual practice conveys accurate messages. She genuinely believes that the information she gathers could help solve murders. Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem… Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). Malice requires that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964). The Plaintiff has failed to provide clear and convincing evidence that Guillard's conduct was malicious, outrageous, or ill intended. Instead, Guillard proved that she was motivated by purpose (see Dkt.

26

65 Exhibit A), and that she was trying to help get justice for the four students (see Dkt. 66 Exhibit A). Therefore, the Court cannot rule that the Defendant was malicious, outrageous, or ill intended because she her ideas stem from spiritual means. The Motion for Leave to Amend the Complaint to add punitive damages must fail.[3]

**IV.     Order- Verdict for 10 million – DKT. 149 & DKT. 169**
**A.      Whether the District Court violated Guillard's right to due process during voir dire for Juror #13 who admitted and exemplified religious bias?**

First, the lower Court asked the potential jury: Do any of you have any beliefs, whether religious or philosophical, which makes it difficult for you to sit in judgment of another person?[4]

JUROR NUMBER 13: Well, I am Catholic, and, like, the psychic side of this case I do not believe in. So it's a little hard for me to not be biased in that case due to my religion. THE COURT: All right. I think I understand that. But what about your religion would prevent you from rendering a fair verdict -- JUROR NUMBER 13: Well, just in the sense of if she's trying to explain where she's coming from and why she did the videos because of, you know, her psychic medium background. I, as a Catholic, don't believe in witchcraft and none of that psychic medium stuff, so it would be hard for me to believe what she's putting out there. THE COURT: Okay. So this case is not necessarily going to be about whether psychic abilities are valid or invalid. That's not what any of the jurors are going to be asked to decide. The only thing the jury is going to be asked to decide is whether Ms. Scofield is entitled to any monetary damages as a result of the defamation in this case and whether -- and, if so, in what amount. Do you think your religious beliefs would interfere with your ability -- JUROR NUMBER 13: No. If it's just based off of, like, the personal damages done to her, then I don't think so. THE COURT: All right. Thank you, Juror Number 13. Guillard Challenged Juror #13 for cause[5]: MS. GUILLARD: I'm concerned with being called a witch. THE

---

[3] DKT. 77 ends
[4] Voir Dire page 43 begin
[5] Voir Dire Page 49

27

COURT: You're talking about -- MS. GUILLARD: Juror Number 13. THE COURT: -- Juror Number 13? MS. GUILLARD: There's no issue that she brought up about the case, that she heard about the case, but I'm just a little concerned that she think I'm a witch. THE COURT: Now, is that -- MS. OLSON: She's the juror who said that her daughter had seen the --THE COURT: So she heard about it while she was cooking, and she hasn't formed any opinions as to the case. MS. GUILLARD: I'm not -- THE COURT: You're right; she did refer to it as witchcraft. Ms. Olson, what's your response to that? MS. OLSON: Your Honor, for the same reasons essentially that the Court did not strike Juror Number 2, she has indicated that she could be fair. The Court made clear to her that there is a difference between, for one thing, liability and damages in this case. And she understands, I think, that her religion and disagreement with -- she may not have the same religion as the psychic, but I think that that is -- she's indicated that she could be fair. THE COURT: Ms. Guillard, I'm inclined to agree with that. I didn't strike Juror Number 2 because he ultimately said he could be fair when I -- MS. GUILLARD: She called me a name. THE COURT: She didn't call you a name. She said it was witchcraft. MS. GUILLARD: Which implies that I'm a witch. THE COURT: She was saying that in the context of her religion. MS. GUILLARD: In a negative way, because she's a Catholic. But, I mean --THE COURT: I understand your position. The bar for cause is a little bit higher, especially when she says that -- when I explained to her this case is not about your psychic abilities, it's not about liability, and it's certainly – and just about damages in this case. She said she could serve as a fair and impartial juror. You are free to exercise a peremptory challenge against her, one of your three, if you want to exclude her from the ultimate jury in the case. MS. GUILLARD: I do have a question, though, because punitive damages, there is intent and there's motive, and we'll have to talk about why I did what I did, and I'll have to talk about psychic or what I'm going to call it, messages. So when I'm talking about those things, I'm

28

wondering if she's going to be thinking, "She's performing witchcraft," instead of accepting that, no, I do things because I believe it to be true. THE COURT: Ms. Olson, what's your response to that? MS. OLSON: Certainly, Your Honor, any juror is free to accept or reject the credibility of Ms. Guillard's statements about why she did what she did -- MS. GUILLARD: Based on religion -- THE COURT: Let her finish. MS. OLSON: About what she did. And this juror, again, has indicated that she could be fair and listen to the evidence. She hasn't indicated that she would disregard evidence because it was presented by someone who has psychic abilities. She has described it in a certain way. It's no different from Juror Number 2 saying that he would impose a cap. They both said things what we think are negative to each of us. They've said they can be fair, and when they say they can be fair, depending on what they say in further questioning, the remedy is to exercise a peremptory challenge. THE COURT: Go ahead, Ms. Guillard. MS. GUILLARD: I just have a question. Can people just say things so they get out of jury duty? THE COURT: That's a very insightful question. Some do, and so you have to be able to --MS. GUILLARD: Like Number 3. THE COURT: All right. So I'm going to deny the motion -- the challenge for cause because when I did explain to her what the case was about -- you make a good point about punitive damages, but it's just about the damage, if any, to Ms. Scofield. And it -- while your psychic abilities, you may explain your beliefs about them, this case is not her deciding whether they're valid or invalid. It's just whether she believes you that you subjectively believe them. So I think she said she could fairly judge that and decide on the amount of damages. So just like Juror Number 2, I'm going to leave her on, but you're free to exercise one of your three peremptory challenges and excuse her from the jury.[6]

---

[6] Voir Dire Page 52 end

29

Did Juror #13 admit to religious bias against Guillard and therefore should have been removed as a juror?

**B.      Whether the District Court violated Guillard's right to due process during voir dire for Juror #5?[7]**

THE COURT: Do any of you personally know or have had any business dealings with any of the following lawyers or law firms involved in this case, that being Stoel Rives, LLP, in Boise, Wendy Olson, or Cory Carone? JUROR NUMBER 5: Judge, this is Juror Number 5. I am a civil rights attorney with a group out of Seattle, and our organization is involved in a lawsuit as co-counsel with Ms. Olson. THE COURT: Okay. Thank you very much, Juror Number 5. Guillard challenged Juror number 5 for cause because he admitted to working with Ms. Olson as co-counsel on another case.[8] The Court initially agreed to strike him for cause but after Ms. Olson did not agree with the Court, and after speaking with Juror number 5, the decision was made that Juror number 5 could remain a Juror despite working with the Plaintiff's Attorney, Ms. Wendy Olson. Judge Patricco explained to Guillard that Idaho is a small town and that this is a common occurrence. Three days later, on the third day of trial, before Guillard presented her case, Juror number 5 wrote a letter to the Court seeking help from the Court to silence Guillard in the case of a large judgment favorable to the plaintiff. Guillard motioned to remove Juror #5. Scofield ultimately agreed and the motion was granted. However, the damage was already done. Judge Patricco lied to the Court and the Jury by saying that Juror #5 was excused due to a family emergency. The truth is that Juror #5 displayed bias. Did the allowance of Juror #5 violate Guillard's right to a fair trial?

---

[7] Begin Voir Dire Page 38
[8] Voir Dire Page 86

30

**V.      Order – DKT 169 Whether the district court erred in granting Plaintiff's Motion For Attorney's Fees (DKT. 151)?**

The trial Court erroneously attributed Guillard's motions for reconsideration as acts of bad faith. Instead, Guillard's Rule 60 motions was an attempt to correct legal errors, correct the trial judges abuse of discretion and preserve the matters for appeal. The preservation requirement affords the adverse party an opportunity to make a necessary factual showing or take available legal counter-steps. It is a defense, often required by the 9th circuit court of appeals, not an act of bad faith. Guillard did not respond to the order because the lower court essentially punished her with attorney's fees in the amount of $27,699.00 for filing motions for reconsideration. Is filing motions for reconsideration an act of bad faith?

## CONCLUSION

Appellant Ashley Guillard requests the Court to reverse the Summary Judgment Order (DKT. 74) and the Final Judgment (DKT. 149) in the Case of Scofield vs. Guillard; and to dismiss the case with prejudice.

DATED:  July 29, 2026

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

31

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I served a copy of the foregoing via CM/ECF on the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: July 29, 2026.


/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant