*Appeal No. 26-2190*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

Rebecca Scofield,

*Appellee,*

v.

Ashley Guillard,

*Appellant.*

On Appeal from the United States District Court
for the District of Idaho
Hon. Raymond E. Patricco
Case No. 3:22-cv-00521-REP

# Appellee's Brief

Wendy J. Olson, Idaho Bar No. 7634
wendy.olson@stoel.com
Cory M. Carone, Idaho Bar No. 11422
cory.carone@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

*Attorneys for Appellee Rebecca Scofield*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .....iv

I. JURISDICTIONAL STATEMENT .....1

II. STATEMENT OF ISSUES .....2

III. STATEMENT OF THE CASE .....3

A. Four University of Idaho students are murdered. .....3

B. Ms. Guillard capitalizes on public interest in the murders. .....4

C. Professor Scofield learns about the posts on Thanksgiving Day and fears for her family. .....5

D. Professor Scofield sends Ms. Guillard two cease-and-desist letters. .....6

E. Professor Scofield files this lawsuit and prevails at trial. .....7

IV. SUMMARY OF THE ARGUMENT .....8

V. ARGUMENT .....10

A. The Court should strike Ms. Guillard's opening brief because it fails to comply with the Federal Rules of Appellate Procedure. .....10

B. The district court had subject matter jurisdiction. .....15

C. The district court had personal jurisdiction. .....17

1. Ms. Guillard has forfeited any appellate challenge to the district court's determination that it had personal jurisdiction. .....18

2. Even if the Court were to consider the merits, it should still affirm the district court's determination that it could exercise personal jurisdiction. .....19

a. Ms. Guillard forfeited any challenge to personal jurisdiction by substantially participating in the litigation. .....20

b. Ms. Guillard made purposeful contact with Idaho that gave rise to this litigation, making the exercise of jurisdiction reasonable. .....22

(i) Ms. Guillard purposefully directed her activities to Idaho. ....23

(ii) Professor Scofield's claims related to or arose from Ms. Guillard's contacts with Idaho. ....24

(iii) Ms. Guillard has not presented a compelling case that it was unreasonable for the district court to exercise jurisdiction. ....25

D. Venue was proper in the District of Idaho. ....26

E. The district court correctly rejected Ms. Guillard's privilege defense. ....27

F. The district court properly granted partial summary judgment in favor of Professor Scofield. ....28

1. The district court applied the appropriate legal standard and substantive law. ....28

2. The district court properly applied the correct legal standard to the evidence adduced by the parties on summary judgment. ....31

3. Ms. Guillard's other assertions of error in the district court's summary judgment decision lack a basis in law, fact or both. ....33

a. The district court's summary judgment decision did not infringe on Ms. Guillard's right to free exercise of religion. ....34

b. The district court had jurisdiction to rule on a dispositive motion in a civil case; it did not exercise state-court criminal jurisdiction. ....35

c. The district court's summary judgment decision did not demonstrate bias against Ms. Guillard. ....35

d. Ms. Guillard did not raise a privilege defense on summary judgment; if she had, it would have failed. ....36

e. Ms. Guillard's disagreement with the district court's order is not a basis for reversal on appeal. ....38

G. The district court properly allowed Professor Scofield to amend her complaint to include a request for punitive damages....................38

H. The district court did not abuse its discretion in voir dire. ................42

1. The district court did not abuse its discretion by denying Ms. Guillard's motion to dismiss Juror No. 5. ........................43

2. The district court did not abuse its discretion by denying Ms. Guillard's motion to dismiss Juror No. 13. ......................46

I. The district court properly awarded attorney's fees to Professor Scofield. ..........................................................................................47

VI. CONCLUSION..........................................................................................50

# TABLE OF AUTHORITIES

**Cases**

*2-Bar Ranch Ltd. P'ship v. United States Forest Serv.*,
996 F.3d 984 (9th Cir. 2021) ....................28

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................29

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*,
17 F.4th 1276 (9th Cir. 2021) ....................20

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ....................48

*Bastidas v. Chappell*,
791 F.3d 1155 (9th Cir. 2015) ....................36

*Berian v. Berberian*,
168 Idaho 394, 483 P.3d 937 (2020) ....................27, 37

*Burchett v. Bromps*,
466 F. App'x 605 (9th Cir. 2012)....................29

*Calder v. Jones*,
465 U.S. 783 (1984)....................23, 24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................29

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018) ....................15

*Clark v. The Spokesman-Rev.*,
144 Idaho 427, 163 P.3d 216 (2007) ....................30

*Coca-Cola Co. v. Overland, Inc.*,
692 F.2d 1250 (9th Cir. 1982) ....................33

*Cox v. Gritman Med. Ctr.*,
170 F.4th 724 (9th Cir. 2026) ....................26

*Darbin v. Nourse*,
664 F.2d 1109 (9th Cir. 1981) ....................................................42, 46

*Davis v. George & Jesse's Les Schwab Tire Store, Inc.*,
173 Idaho 309, 541 P.3d 667 (2023) ..............................................37

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ....................................................12, 28

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) ....................................................29

*Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*,
164 Idaho 669, 434 P.3d 1275 (2019), *as amended* (Apr. 22, 2019) ................27

*E.E.O.C. v. Wal-Mart Stores, Inc.*,
156 F.3d 989 (9th Cir. 1998) ....................................................38

*Est. of Kane v. Epley's Inc.*,
No. 3:15-CV-00105-EJL-REB, 2017 WL 1158242 (D. Idaho Mar. 28, 2017) ....................................................39

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
905 F.3d 597 (9th Cir. 2018) ....................................................26

*Freytag v. C.I.R.*,
501 U.S. 868 (1991)....................................................36

*Frudden v. Pilling*,
877 F.3d 821 (9th Cir. 2017) ....................................................28

*G.P.P., Inc. v. Guardian Protection Products, Inc.*,
126 F.4th 1367 (9th Cir. 2025) ....................................................47

*Gertsch v. Johnson & Johnson, Fin. Corp.*,
237 B.R. 160 (B.A.P. 9th Cir. 1999) ..............................................33

*Greene v. Harley-Davidson, Inc.*,
965 F.3d 767 (9th Cir. 2020) ....................................................17

*Hall v. Farmers All. Mut. Ins. Co.*,
145 Idaho 313, 179 P.3d 276 (2008) ..............................................40

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ....................................................................38

*Hollcroft v. Department of Treasury, I.R.S.*,
687 F. Supp. 510 (E.D. Cal. 1988) ............................................................12

*Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*,
306 F.3d 842 (9th Cir. 2002) ....................................................................26

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
903 F.3d 896 (9th Cir. 2018) ...............................................................17, 20

*Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v. Martin Jaska, Inc.*,
752 F.2d 1401 (9th Cir. 1985) ..................................................................18

*Maine Cmty. Health Options v. Albertsons Companies, Inc.*,
993 F.3d 720 (9th Cir. 2021) ....................................................................15

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023)...................................................................................20

*Malmin v. Engler*,
124 Idaho 733, 864 P.2d 179 (Ct. App. 1993)...........................................27

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) .............................................................23, 24

*Munoz v. United States*,
28 F.4th 973 (9th Cir. 2022) .....................................................................11

*Myers v. Workmen's Auto Ins. Co.*,
140 Idaho 495, 95 P.3d 977 (2004) ..........................................................40

*N/S Corp. v. Liberty Mut. Ins. Co.*,
127 F.3d 1145 (9th Cir. 1997) .............................................................11, 15

*Naffe v. Frey*,
789 F.3d 1030 (9th Cir. 2015) .............................................................15, 16

*Olsen v. Idaho State Bd. of Med.*,
363 F.3d 916 (9th Cir. 2004) ....................................................................28

*Paine v. City of Lompoc*,
160 F.3d 562 (9th Cir. 1998) ....................................................................12, 42

*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998) ....................................................................20, 22

*Reebok Int'l Ltd. v. McLaughlin*,
49 F.3d 1387 (9th Cir. 1995) ....................................................................18

*Sadid v. Vailas*,
943 F. Supp. 2d 1125 (D. Idaho 2013) ....................................................................38

*Safeco Ins. Co. of Ill. v. LSP Prods. Grp., Inc.*,
659 F. Supp. 3d 1131 (D. Idaho 2023) ....................................................................48

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................................................................22, 25

*Seiniger L. Off., P.A. v. N. Pac. Ins. Co.*,
145 Idaho 241, 178 P.3d 606 (2008) ....................................................................40, 42

*Sekiya v. Gates*,
508 F.3d 1198 (9th Cir. 2007) ....................................................................11, 12, 15

*Skilling v. United States*,
561 U.S. 358 (2010)....................................................................47

*Soc. Techs. LLC v. Apple Inc.*,
4 F.4th 811 (9th Cir. 2021) ....................................................................28

*Southern Calif. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ....................................................................29

*Strong v. Unumprovident Corp.*,
393 F. Supp. 2d 1012 (D. Idaho 2005) ....................................................................39

*Tinsley v. Borg*,
895 F.2d 520 (9th Cir. 1990) ....................................................................43, 46

*United States v. Baldwin*,
607 F.2d 1295 (9th Cir. 1979) ....................................................................43

*United States v. Bird*,
359 F.3d 1185 (9th Cir. 2004) ....................................................................18

*United States v. Lopez*,
762 F.3d 852 (9th Cir. 2014) ......................................................................36

*United States v. Merrill*,
746 F.2d 458 (9th Cir. 1984), *overruled on other grounds by Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) ...............................................11

*United States v. Miguel*,
111 F.3d 666 (9th Cir. 1997) ..................................................................43, 46

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) ..................................................................43, 44

*Vendelin v. Costco Wholesale Corp.*,
140 Idaho 416, 95 P.3d 34 (2004) ..............................................................39

*Walston v. Monumental Life Ins. Co.*,
129 Idaho 211, 923 P.2d 456 (1996) ............................................................40

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ....................................................................23

**Statutes**

28 U.S.C. § 1291 .............................................................................................1

28 U.S.C. § 1332 .............................................................................................1

28 U.S.C. § 1332(a) ........................................................................................16

28 U.S.C. § 1332(a)(1).....................................................................................15

28 U.S.C. § 1391(b)(2).....................................................................................26

Idaho Code § 6-1604(1) ...................................................................................39

Idaho Code § 6-1604(2) ...................................................................................39

Idaho Code § 12-121 .......................................................................................48

**Rules**

9th Cir. R. 28-1-4 ....................10, 11

9th Cir. R. 28-2.8 ....................10

Fed. R. App. P. 28 ....................10, 11

Fed. R. App. P. 28(a)(1) ....................11

Fed. R. App. P. 28(a)(2) ....................10

Fed. R. App. P. 28(a)(3) ....................10

Fed. R. App. P. 28(a)(6) ....................10

Fed. R. App. P. 28(a)(8)(A) ....................11, 12, 14, 15

Fed. R. App. P. 28(a)(8)(B) ....................10, 12

Fed. R. App. P. 28(e) ....................10

Fed. R. App. P. 32(g) ....................11

Fed. R. Civ. P. 12 ....................20

Fed. R. Civ. P. 12(b)(2) ....................19

Fed. R. Civ. P. 12(b)(2)–(3) ....................21

Fed. R. Civ. P. 12(h)(1)(B) ....................20

Fed. R. Civ. P. 26(f) ....................21

Fed. R. Civ. P. 56(a) ....................29

Fed. R. Civ. P. 60 ....................48

**Constitutional Provisions**

First Amendment ....................34

U.S. Const., Art. III ....................50

## I. JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 because there was complete diversity between the parties and an amount in controversy exceeding $75,000. Plaintiff Rebecca Scofield is an individual residing in Idaho. 4-SER-722. Defendant Ashley Guillard is an individual residing in Texas. 4-SER-722. Professor Scofield alleged an amount in controversy exceeding $75,000 because Ms. Guillard's defamatory statements damaged Professor Scofield's professional reputation, caused Professor Scofield to suffer emotional distress, and caused Professor Scofield to incur costs to purchase a security system and camera for her home. 4-SER-722; 4-SER-728.

Following a jury trial, the district court entered a final judgment on March 5, 2026, 1-SER-2, and Ms. Guillard filed a timely notice of appeal on April 6, 2026, 5-SER-916-918. This Court has subject-matter jurisdiction under 28 U.S.C. § 1291 because Ms. Guillard has appealed a final decision of a district court of the United States.

## II. STATEMENT OF ISSUES

Issue #1: Whether the Court should strike Ms. Guillard's opening brief and dismiss the appeal because the brief fails to comply with the Federal Rules of Appellate Procedure and Ninth Circuit rules?

Issue #2: Whether the district court properly exercised subject-matter jurisdiction when there was complete diversity between the parties and Professor Scofield alleged damages exceeding $75,000?

Issue #3: Whether the district court properly exercised specific personal jurisdiction when Ms. Guillard purposefully directed her defamatory speech to Idaho and substantially participated in the litigation before challenging personal jurisdiction?

Issue #4: Whether venue was proper when Ms. Guillard's defamatory speech targeted Idaho?

Issue #5: Whether the district court correctly rejected Ms. Guillard's litigation and law enforcement privilege defenses when the defamatory speech at issue occurred publicly on TikTok?

Issues #6: Whether the district court properly granted partial summary judgment in favor of Professor Scofield when Ms. Guillard presented no credible evidence to support her false statements?

Issue #7: Whether the district court properly granted Professor Scofield leave to seek punitive damages at trial when Ms. Guillard made false statements without any credible evidence to gain notoriety on the internet?

Issue #8: Whether the district court abused its discretion during voir dire when it allowed jurors who said they could be impartial to serve on the jury and Ms. Guillard did not exercise her peremptory strikes against the now-challenged jurors?

Issue #9: Whether the district court properly awarded attorney's fees?

## III. STATEMENT OF THE CASE

### A. Four University of Idaho students are murdered.

On November 13, 2022, four University of Idaho students were stabbed to death at a home near campus in Moscow, Idaho. Bryan Kohberger was arrested for the murders on December 30, 2022, and later pleaded guilty to the crimes. 5-SER-913-915.

Although the public took an extreme interest in the crimes, law enforcement publicly shared very little information before Mr. Kohberger's arrest to preserve the integrity of its investigation. 5-SER-756; 5-SER-809; 5-SER-824-25. The resulting information vacuum was filled online, where social media amplified speculation, gossip, and theories about what happened. 5-SER-737; 5-SER-808; 5-SER-824-25. Those fictional accounts, however, often targeted real people. One of the more

popular theories online centered around Jack DuCoeur, an ex-boyfriend of one of the victims. 5-SER-811; 5-SER-824-25.

**B. Ms. Guillard capitalizes on public interest in the murders.**

On November 23, 2022, Ms. Guillard launched a series of videos on TikTok designed to tap into the existing interest in the murders at the University of Idaho. 5-SER-820. She started with a teaser video stating that she had solved the crimes. 5-SER-820. The next day, she posted Professor Scofield's biography webpage from the University of Idaho's website—including her name, picture, and office address—and started telling the world that Professor Scofield had a same-sex affair with one of the victims and then orchestrated the murders to cover up the affair. Trial Exs. 40 and 41; *see also* 5-SER-739-40; 5-SER-776-78; 5-SER-821.

To maximize her publicity, Ms. Guillard used the already popular story online about Jack DuCoeur and linked it to her new story about Professor Scofield—stating that the two partnered to kill the victims. Trial Exs. 40 and 41; 5-SER-811. Ms. Guillard posted prolifically, publishing at least 114 videos between November 24, 2022, and December 19, 2022. 5-SER-852-909; 5-SER-817. And she went viral. Ms. Guillard used hashtags to increase her viewership, including creating a hashtag for Professor Scofield's name that had *one million views* by December 1, 2022. 5-SER-811-12.

### C. Professor Scofield learns about the posts on Thanksgiving Day and fears for her family.

While Ms. Guillard enjoyed attention on the internet, Professor Scofield suffered the consequences in real life. On Thanksgiving Day in 2022, Professor Scofield received an email from a stranger with a link to a video. 5-SER-738. The video was one of the first in Ms. Guillard's series, stating this is the teacher who ordered the execution of the students with a photo of Professor Scofield. 5-SER-740. Seeing the video "derailed" Professor Scofield's Thanksgiving. 5-SER-740. She eventually forwarded the video to her dean and then, at his suggestion, contacted the Moscow Police Department and the University of Idaho's security office. 5-SER-742. By that point, law enforcement had already watched 10 videos—more than Professor Scofield even knew existed—and then the University of Idaho's IT department removed all information about Professor Scofield from the school's webpages. 5-SER-742-43.

That evening, Professor Scofield "felt like [she] was having a panic attack." 5-SER-744. Her heart was racing, she was sweating, and her blood was rushing. 5-SER-745. Unable to sleep and fearful that somebody might lash out in response to the videos, Professor Scofield testified, "I went and laid in my son's bed because his bedroom is the closest to an entrance to our house. And I was so afraid for him, so I just sat there at the end of his bed all night and watched him." 5-SER-745.

### D. Professor Scofield sends Ms. Guillard two cease-and-desist letters.

Professor Scofield feared for herself and her family because "the speculation was just growing and growing and people's concerns about the fact that there were no suspects or even no leads, and all of a sudden my name was being shouted into a world where four young people had just been killed and there was a person who had done it still possibly in our community." 5-SER-748-49. In an effort "to get everyone stable and protected," Professor Scofield decided to send Ms. Guillard a cease-and-desist letter because she "felt that maybe if we sent a letter, this person would realize that I was a human who had a family." 5-SER-749; 5-SER-910-11.

Ms. Guillard did not respond to the cease-and-desist letter, so Professor Scofield sent another. 5-SER-753; 5-SER-912. Ms. Guillard then posted a TikTok video putting the letter on her toilet paper roll saying she put it there so "I can wipe my ass with it." Trial Ex. 43; *see also* 5-SER-755; 5-SER-781-82.

Meanwhile, Professor Scofield "started to get really strange calls and messages, sometimes to [her] personal phone. Sometimes they were just random people, you know, asking if this was true. Other times it was journalists." 5-SER-751. Her name also auto-populated with "Moscow murders" on Google, and she had to put much of her professional work on hold because "it put at risk anything that was public facing, anything that had my name on it." 5-SER-752-53.

### E. Professor Scofield files this lawsuit and prevails at trial.

With Ms. Guillard unwilling to simply stop with her posts, Professor Scofield filed this lawsuit alleging two counts of defamation—one for the false statement that Professor Scofield had an inappropriate relationship with a student and another for the false statement that Professor Scofield orchestrated the four murders. 4-SER-721-32. Ms. Guillard did not timely respond, so the Clerk of the Court entered default. 4-SER-720. Ms. Guillard then filed an answer, 4-SER-695-700, counterclaims against Professor Scofield and her attorneys, 4-SER-700-19, and a motion for relief from the entry of default, 4-SER-689-94.

After the district court set aside the default over Professor Scofield's opposition, 4-SER-674-84, the parties proceeded with discovery. When Ms. Guillard failed to respond to discovery requests directed to her, Professor Scofield moved for summary judgment in part based on requests for admission that were deemed admitted. 3-SER-389-91. At the hearing on that motion, the district court sua sponte extended Ms. Guillard's deadline to respond to discovery and set a briefing schedule for an amended motion for summary judgment. 3-SER-363-64.

Professor Scofield then filed that amended motion for summary judgment, which the district court ultimately granted. 2-SER-173; 3-SER-360-62. The district court's summary judgment decision determined that Ms. Guillard defamed Professor Scofield—meaning she published false statements that were defamatory in nature—

and that her statements were defamatory per se, but it left for trial the amount of damages, if any. 2-SER-152-73.

After a four-day jury trial, a unanimous jury found damages in favor of Professor Scofield on both of her defamation claims. 2-SER-30-31. The jury awarded her $1 million in compensatory damages and $2.5 million in punitive damages for the false statement that Professor Scofield had an inappropriate relationship with a student and $1.5 million in compensatory damages and $5 million in punitive damages for the false statement that Professor Scofield orchestrated the murder of four students. 2-SER-30-31 This appeal followed. 5-SER-916-18.

## IV. SUMMARY OF THE ARGUMENT

This Court should affirm the judgment. As a threshold matter, Ms. Guillard's opening brief fails to comply with the basic requirements of the Federal Rules of Appellate Procedure and this Court's rules. It does not provide the required tables, meaningful standards of review, adequate record citations, excerpts of record, or developed legal argument. Those deficiencies require Professor Scofield and the Court to reconstruct the record and the legal theories for Ms. Guillard, and they warrant striking the brief and dismissing the appeal.

In any event, the challenged rulings were correct. The district court had diversity jurisdiction because Professor Scofield's good-faith allegations placed

more than $75,000 in controversy, and Ms. Guillard's contrary arguments go to the merits and amount of damages, not jurisdiction. The district court also properly exercised personal jurisdiction because Ms. Guillard forfeited that defense through substantial participation in the litigation and, separately, purposefully directed Idaho-centered accusations at an Idaho professor concerning Idaho events. Venue was proper for the same reason: A substantial part of the events and injuries giving rise to the claims occurred in Idaho.

The district court also correctly rejected Ms. Guillard's privilege defenses. The allegedly defamatory communications were public social media posts, not statements made in a judicial proceeding, to a court, or to law enforcement in a protected investigative setting. The district court then properly granted partial summary judgment on liability because Professor Scofield presented unrebutted evidence that the accusations were false and defamatory per se, while Ms. Guillard offered no admissible facts creating a genuine dispute. The district court likewise acted within the governing Idaho standard when it allowed Professor Scofield to amend to seek punitive damages based on evidence that Ms. Guillard repeatedly published grave accusations without an objective factual basis and continued doing so after receiving information showing they were false.

Further, the district court did not abuse its discretion during voir dire. The record shows that the challenged jurors did not demonstrate actual bias, that one did

not deliberate, and that Ms. Guillard did not use available peremptory challenges to remove either juror. Finally, the district court did not abuse its discretion in awarding a limited amount of attorney's fees. The fee award rested on the case as a whole, including Ms. Guillard's persistence in unsupported accusations and litigation conduct that delayed the case and increased costs. The judgment and related orders should therefore be affirmed in full.

## V. ARGUMENT

### A. The Court should strike Ms. Guillard's opening brief because it fails to comply with the Federal Rules of Appellate Procedure.

This Court should strike Ms. Guillard's opening brief in its entirety and dismiss her appeal. Her opening brief is wholly deficient and fails to comply in substantial part with the Federal Rules of Appellate Procedure and this Court's rules. Contrary to Federal Rule of Appellate Procedure 28 and Circuit Rules 28-1-4, Ms. Guillard's brief contains no table of contents (Fed. R. App. 28(a)(2)), no table of authorities (Fed. R. App. 28(a)(3)), no concise statement of the case with appropriate references to the record (Fed. R. App. 28(a)(6)), no meaningful effort to identify specific standards of review (Fed. R. App. P. 28(a)(8)(B)), no appendix or excerpts of record, virtually no references to trial transcripts or other parts of the record for this Court to identify the source of the facts on which Ms. Guillard relies (*see* Fed. R. App. P. 28(e); 9th Cir. R. 28-2.8), and virtually no citation to caselaw, let alone

authoritative caselaw, supporting Ms. Guillard's contentions and the reasons for them (Fed. R. App. P. 28(a)(8)(A)).[1]

Federal Rule of Appellate Procedure 28 and Circuit Rules 28-1-4 set out "the mandatory components of a brief on appeal." *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007). As this Court has explained, those rules exist for good reason. *Id.* "In order to give fair consideration to those who call upon us for justice, we must insist that parties not clog the system by presenting us with a slubby mass of words rather than a true brief." *Id.* (quoting *N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir. 1997)). That Ms. Guillard is representing herself on appeal, as she has throughout this litigation, is no excuse. *See Munoz v. United States,* 28 F.4th 973, 978 (9th Cir. 2022) ("[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants."); *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984) (recognizing that a pro se plaintiff is subject to the same rules of procedure as litigants who are represented by counsel), *overruled on other grounds by Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002).

[1] Ms. Guillard's opening brief also lacks a certificate of compliance regarding word count as required by Rules 28(a)(1) and 32(g), but the brief is within the word limit.

The deficiencies in Ms. Guillard's brief are not just "inartful pleading," which this Court liberally construes. *See*, *e.g.*, *Hollcroft v. Department of Treasury, I.R.S.*, 687 F. Supp. 510, 513 (E.D. Cal. 1988) (collecting cases). Rather, those deficiencies require this Court (and Professor Scofield) to attempt to find the asserted facts and to guess at Ms. Guillard's legal bases for her contentions and the parts of the record on which they rely. *See* Fed. R. App. P. 28(a)(8)(A); *Sekiya*, 508 F.3d at 1200.

The deficiencies in Ms. Guillard's brief begin in her introduction, where she requests a de novo standard of review, asserting there are "mixed questions." Appellant's Opening Brief ("App. Br.") at 1. But the issues she purports to raise, as set forth above, include issues of pure law, which do have a de novo standard of review, *see*, *e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021) (a district court's decision to grant summary judgment is reviewed de novo), and issues that are wholly within the district court's discretion and to which an abuse of discretion standard applies, *see*, *e.g.*, *Paine v. City of Lompoc*, 160 F.3d 562, 564 (9th Cir. 1998) (holding that an abuse of discretion standard of review applies to a district court's conduct of voir dire). Thus, she does not provide adequate standards of review as required by Federal Rule of Appellate Procedure 28(a)(8)(B).

In addition, Ms. Guillard did not submit an appendix or excerpts of record. Thus, Professor Scofield must prepare and submit excerpts of record rather than, if necessary, merely supplementing those provided by the appellant. And although Ms.

Guillard plainly has the Court orders and trial transcript on which she purports to rely, she quotes directly from them or cites to them infrequently. For example, when Ms. Guillard initially describes and sets out facts from the jury trial, her brief does not cite the trial transcript at all. App. Br. at 5–6. In addition, where she purports to challenge the district court's diversity jurisdiction, she asserts that in her pleadings "and throughout the litigation" she made arguments that Professor "Scofield did not lose her job, did not lose promotions, did not suffer reputational hard [sic], and therefore could not have pain and suffering damages." App. Br. at 7. But in making those arguments on appeal, other than a general reference to two docket entries, she does not point the Court to the part of the record where she made those arguments in the district court, and although she refers to specific facts, she provides no excerpts of record from which the Court could find those facts. App. Br. at 7–8. Similarly, Ms. Guillard refers to statements the district court made during the hearing on Professor Scofield's summary judgment motion but does not specifically cite or provide the transcript of that hearing for this Court to review. App. Br. at 22.

Moreover, although she refers in footnotes on five occasions to pages in the trial transcript related to voir dire, App. Br. at 27 n.4, n.5; 29 n.6; 30 n.7, n.8, she does not offer specific citations for other facts that she asserts, App. Br. at 30 (stating, without citation to any transcript, "The Court initially agreed to strike him for cause but after Ms. Olson did not agree with the Court and after speaking with

Juror number 5, the decision was made that Juror number 5 could remain a Juror despite working with Plaintiff's Attorney, Ms. Wendy Olson. Judge Patricco explained to Guillard that Idaho is a small town and that this is a common occurrence.").[2] Again, because she does not provide excerpts of record, this Court and Professor Scofield must comb through the transcript to identify Ms. Guillard's assertions and assess their accuracy.

Ms. Guillard's brief also lacks meaningful cites to legal authority. Many of the cases she cites come from the long portions of the district court's orders she includes—and disagrees with. *See*, *e.g.*, App. Br. at 8–9; 13. And where she disagrees with the district court's orders and analysis, she includes purported facts without citation to the record. App. Br. at 11, 13–14, 16.

In sum, Ms. Guillard's brief does not provide an argument that, as required by this Court's rules, contains her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App.

---

[2] Ms. Guillard omits that the district court questioned Juror No. 5 at sidebar, obtained a more detailed explanation of Juror No. 5's work with Professor Scofield's counsel, and that Juror No. 5 unequivocally stated that his prior work with Professor Scofield's counsel would not affect his ability to be fair and impartial. 6-SER-955. After hearing that response, Ms. Guillard said she had no further questions for Juror No. 5. 6-SER-956. Moreover, the district court did not say that Idaho is a small town and that this is a common occurrence. The district court said that "[t]he legal community in Idaho is pretty small, so this is not uncommon." 6-SER-957. The district court then asked Ms. Guillard if she still had a motion to dismiss for cause and she said "No." 6-SER-957.

P. 28(a)(8)(A); *Sekiya*, 508 F.3d at 1200. This Court should strike Ms. Guillard's brief and dismiss her appeal. Moreover, for the reasons set forth below, her appeal fares no better on the merits. Nor would striking the brief risk foreclosing a meritorious appeal; as explained below, the challenged rulings were correct. *Sekiya*, 508 F.3d at 1200 (citing *N/S Corp.*, 127 F.3d at 1146).

**B. The district court had subject matter jurisdiction.**

The Court reviews de novo "the existence of subject matter jurisdiction," including whether the amount-in-controversy requirement is satisfied for diversity jurisdiction. *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 415 (9th Cir. 2018); *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021). Federal courts have diversity jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015). Both requirements were satisfied here. The parties are residents of different states: Ms. Guillard resides in Texas, and Professor Scofield resides in Idaho. 4-SER-722. And Professor Scofield alleged damages exceeding $75,000 based on reputational harm, emotional distress, and security-related expenses caused by Ms. Guillard's defamatory statements. 4-SER-722; 4-SER-728. The only disputed issue is whether the amount-in-controversy requirement was met.

It was. When, as here, a plaintiff files suit in federal court, the Court "use[s] the 'legal certainty' test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement." *Naffe*, 789 F.3d at 1039. Under that test, "the sum claimed by the plaintiff controls," and dismissal is appropriate only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 1040. That standard "makes it very difficult to secure a dismissal" and is satisfied only in limited circumstances: "1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* (citation omitted).

None of those circumstances are present here. This is a defamation case, so no contract limits Professor Scofield's recovery. Ms. Guillard identifies no rule of law, damages cap, or other legal limit that would reduce Professor Scofield's potential recovery below $75,000. Nor does she identify independent facts showing that Professor Scofield alleged the jurisdictional amount merely to manufacture federal jurisdiction.

Instead, Ms. Guillard offers merits arguments as jurisdictional ones. She argues, as she did at trial, that Professor Scofield was not credible when testifying about her damages, that defamation cannot cause serious trauma, and that Ms.

Guillard's statements did not harm Professor Scofield's professional reputation. But those are factual defenses to liability and damages; they are not legal limits on the amount in controversy.

That distinction is dispositive. The amount in controversy is measured at the time of filing and reflects "the 'amount at stake in the underlying litigation,' not the likely liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (citation omitted). Factual defenses—however characterized—are "*irrelevant* to determining the amount that is at stake in the litigation" because courts do not resolve the merits when assessing the amount in controversy. *Id.* (emphasis added). The jury's later unanimous verdict awarding Professor Scofield $2.5 million in compensatory damages only confirms that this was not a case in which it was legally certain from the outset that less than $75,000 was at stake. The district court therefore properly exercised diversity jurisdiction.

**C. The district court had personal jurisdiction.**

A district court's determination that a litigant waived a challenge to personal jurisdiction is reviewed for an abuse of discretion. *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 900 (9th Cir. 2018). When the defense has been preserved, "[a] district court's determination that personal jurisdiction can properly be exercised is a question of law reviewable de novo when the underlying facts are not disputed . . . . The district court's factual findings on all jurisdictional issues must

be accepted unless clearly erroneous." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) (citations omitted).

The district court held it could exercise specific personal jurisdiction over Ms. Guillard for two independent reasons. The first reason was that she had waived or forfeited any challenge by substantially participating in the litigation. 3-SER-376-77. The second reason was that Ms. Guillard made purposeful contact with Idaho that gave rise to this litigation. 3-SER-377-81. Although Ms. Guillard lists "[w]hether the district court erred in claiming personal jurisdiction" as an issue presented on appeal, App. Br. 24, she fails to present any argument about why she contends the district court erred on either basis. Ms. Guillard has thus forfeited any appellate challenge, and the district court's decision should be affirmed. But even if the Court were to consider the merits, the district court should still be affirmed because it correctly determined that it had personal jurisdiction over Ms. Guillard.

1. **Ms. Guillard has forfeited any appellate challenge to the district court's determination that it had personal jurisdiction.**

An appellant forfeits the right to challenge on appeal an issue not raised in the appellant's opening brief. *See United States v. Bird*, 359 F.3d 1185, 1189 n.1 (9th Cir. 2004) ("Under the law of this circuit, we decline to consider an issue which was not . . . raised as an issue in appellant's opening brief."); *see also Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will not ordinarily consider matters on

appeal that are not specifically and distinctly raised and argued in appellant's opening brief.").

Here, the district court held that it could exercise specific personal jurisdiction over Ms. Guillard for two reasons. The first reason was that Ms. Guillard forfeited any challenge to personal jurisdiction "when she substantially participated in the litigation without first moving to dismiss under Rule 12(b)(2)." 3-SER-376. The second reason was that Ms. Guillard made purposeful contact with Idaho that gave rise to this litigation. 3-SER-377-81.

Ms. Guillard did not present specific arguments challenging either determination in her opening briefing. She has thus forfeited any appellate challenge to the district court's holding that it could exercise personal jurisdiction. Since there is no challenge to either independent basis for the district court's decision, the Court should affirm the district court's determination that it could exercise specific personal jurisdiction without addressing Ms. Guillard's other arguments.

**2. Even if the Court were to consider the merits, it should still affirm the district court's determination that it could exercise personal jurisdiction.**

As explained above, the district court held it could exercise personal jurisdiction over Ms. Guillard both because she had substantially participated in the litigation prior to raising any challenges to personal jurisdiction and because she made purposeful contact with Idaho that gave rise to this litigation. 3-SER-376-81.

While only one of those determinations needs to be correct for the Court to affirm, the district court correctly made both determinations.

**a. Ms. Guillard forfeited any challenge to personal jurisdiction by substantially participating in the litigation.**

"[P]ersonal jurisdiction is a *personal* defense that may be waived or forfeited." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 144 (2023). Challenges to personal jurisdiction are waived if they are not raised in a motion brought under Rule 12 or made in a responsive pleading. Fed. R. Civ. P. 12(h)(1)(B). A challenge may also be waived "as a result of [a] course of conduct," such as "sandbagging" by waiting to raise the issue until a litigant is unhappy with decisions on the merits. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998); *see also Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1283 (9th Cir. 2021) (holding that a litigant forfeits a challenge to personal jurisdiction when after preserving the objection in an answer the litigant goes on to actively litigate the case on the merits).

The district court did not abuse its discretion in holding that Ms. Guillard forfeited her challenge to personal jurisdiction. *See InfoSpan*, 903 F.3d at 900 (applying the abuse of discretion standard to a district court's determination that a litigant waived a challenge to personal jurisdiction). The district court correctly interpreted the law, observing that a challenge to personal jurisdiction can be waived or forfeited if a litigant actively participates in litigation. 3-SER-376-77. It then

determined Ms. Guillard's conduct was sufficient to constitute a forfeiture. 3-SER-376-77.

That determination was well within the district court's discretion. In her answer, Ms. Guillard did not assert lack of personal jurisdiction as an affirmative defense. 4-SER-617-19. Although the district court gave Ms. Guillard the benefit of the doubt based on her challenge to venue, improper venue and lack of personal jurisdiction are distinct defenses that should be pleaded separately. *See* Fed. R. Civ. P. 12(b)(2)–(3).

In any event, Ms. Guillard appeared in this case on February 16, 2023, and waited until August 21, 2023, to challenge the district court's personal jurisdiction. 4-SER-695-719; 3-SER-442-44. She actively litigated the case during that time, including asserting counterclaims and attempting to add parties (Professor Scofield's legal counsel) to the case, (4-SER-619-72; 4-SER-600-12); briefing and arguing in court (virtually) the merits of her counterclaims, (4-SER-566-85; 4-SER-559-65; 4-SER-558); participating in a Rule 26(f) conference, stipulating to litigation deadlines, and filing a discovery plan, (4-SER-586-99); and issuing a subpoena to a third party for discovery related to Professor Scofield's claims against Ms. Guillard, (4-SER-70-82; 3-SER-392-98).

Ms. Guillard litigated the merits in Idaho for months and raised personal jurisdiction only after receiving an adverse ruling. On August 8, 2023, the district

court dismissed Ms. Guillard's counterclaims on the merits. 3-SER-445-67. Then two weeks later she challenged personal jurisdiction for the first time, largely framed as an attempt to "void" the district court's merits decision from a few weeks prior. 3-SER-412-27. That tack is precisely the "sandbagging" this Court held in *Peterson* constituted a waiver. Ms. Guillard could not first test the waters with the district court on the merits of her case, then pivot to raising jurisdictional defenses once the parties and the district court had expended time and resources on the merits because Ms. Guillard did not like the outcome. Accordingly, the district court did not abuse its discretion in determining that Ms. Guillard had forfeited her challenge to personal jurisdiction.

**b. Ms. Guillard made purposeful contact with Idaho that gave rise to this litigation, making the exercise of jurisdiction reasonable.**

Even if Ms. Guillard had preserved her challenge to personal jurisdiction, the district court correctly determined that it could exercise specific personal jurisdiction. The Court uses a three-prong test to analyze specific personal jurisdiction when a claim sounds in tort: (1) The non-resident defendant must purposefully direct his activities to the forum, (2) the claim must arise out of or relate to the defendant's forum-related activities, and (3) the exercise of jurisdiction must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs, and if

satisfied, the burden shifts to the defendant to "present a compelling case" about why the exercise of jurisdiction would be unreasonable. *Id.* All three prongs are satisfied here.

**(i) Ms. Guillard purposefully directed her activities to Idaho.**

In tort cases, the Court determines whether a defendant purposefully directed his activities at the forum state by "applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In *Calder v. Jones*, 465 U.S. 783 (1984), for example, the Supreme Court held that even when a defamatory magazine article about a California resident was largely written in Florida, a court in California could still exercise personal jurisdiction because the "libelous story concerned the California activities of a California resident" and "impugned the professionalism of an entertainer whose television career was centered in California." *Id.* at 788. As a result, the "brunt of the harm"—such as the plaintiff's "emotional distress and the injury to her professional reputation"—were suffered in California. *Id.* at 789. Jurisdiction was "therefore proper in California based on the 'effects' of [the defendants'] Florida conduct in California." *Id.*; *see also Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) ("The requirement is satisfied 'when the

defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" (citation omitted)).

Here, an Idaho court could exercise jurisdiction over Ms. Guillard for the same reasons. Professor Scofield resides in Idaho and is a professor at the University of Idaho. 4-SER-722. Ms. Guillard admitted to posting over 100 TikTok videos about Professor Scofield and the murder of four students at the University of Idaho. 4-SER-626. In those videos, Ms. Guillard falsely stated that Professor Scofield had an affair with a University of Idaho student and then orchestrated the murder of four University of Idaho students in Idaho to cover up the affair. Trial Exs. 40 and 41. As a result of Ms. Guillard's defamatory statements, Professor Scofield suffered emotional harm in Idaho and reputational harm at her place of employment in Idaho. 5-SER-744-45; 5-SER-748-70. So here, like in *Calder*, "the focal point both of the story and of the harm suffered" was in the forum state. 465 U.S. at 789. The effects of Ms. Guillard's defamatory statements were thus felt in Idaho, which is sufficient to satisfy the "purposefully directed" prong of the jurisdictional analysis.

**(ii) Professor Scofield's claims related to or arose from Ms. Guillard's contacts with Idaho.**

To satisfy the second prong of the analysis—whether the claim relates to or arises from the defendant's contacts with the forum—a plaintiff "must show that he would not have suffered an injury 'but for' [the defendant's] forum-related conduct." *Menken*, 503 F.3d at 1058. Here, Professor Scofield asserted two claims against Ms.

Guillard: one claim for defamation related to Ms. Guillard's false statements that Professor Scofield orchestrated the murder of four University of Idaho students in Idaho, and a second claim for defamation related to Ms. Guillard's false statements that Professor Scofield had an inappropriate romantic affair with a University of Idaho student in Idaho. 2-SER-146-49. Professor Scofield would not have endured the emotional and reputational harm she suffered related to those two claims but for Ms. Guillard's contacts with Idaho described in the section above. Accordingly, this second prong of the jurisdictional analysis is satisfied.

**(iii) Ms. Guillard has not presented a compelling case that it was unreasonable for the district court to exercise jurisdiction.**

Once the first two prongs of the jurisdictional analysis have been satisfied, it is Ms. Guillard's burden to "present a compelling case" about why the district court's exercise of jurisdiction was unreasonable. *Schwarzenegger*, 374 F.3d at 802 (citation omitted). "To evaluate reasonableness, [the Court] use[s] a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Ms. Guillard has not explained why *any* of those factors cut against jurisdiction in Idaho. She has thus failed to carry her burden of presenting a compelling case that it was unreasonable for a court in Idaho to exercise jurisdiction over her.

In sum, all three prongs of the jurisdictional analysis favor the finding that a court in Idaho could exercise specific personal jurisdiction over Ms. Guillard. The district court's personal-jurisdiction ruling should therefore be affirmed.

**D. Venue was proper in the District of Idaho.**

A district court's ruling on venue is reviewed de novo. *Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 868 (9th Cir. 2002). A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "The 'locus of the injury' is sufficient to establish proper venue." *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 743 (9th Cir. 2026) (citation omitted). Here, the locus of the injury is Idaho. Professor Scofield works and lives in Idaho, so when Ms. Guillard defamed her, she suffered both emotional distress and reputational harm in Idaho. 5-SER-744-45, 48-70. Ms. Guillard does not argue that the locus of injury was elsewhere; she just questions the validity of Professor Scofield's damages. But those are merits arguments, not venue arguments. And in

any event, the jury rejected them, finding that Professor Scofield suffered $2.5 million in compensatory damages in Idaho. 2-SER-30-31. Venue was proper in the District of Idaho, so the district court's decision should be affirmed.

**E. The district court correctly rejected Ms. Guillard's privilege defense.**

In Idaho, "defamatory statements made in the course of a judicial proceeding are absolutely privileged." *Berian v. Berberian*, 168 Idaho 394, 403, 483 P.3d 937, 946 (2020). For the judicial privilege to apply, there are "two requirements . . . (1) 'the defamatory statement was made in the course of a proceeding' and (2) it 'had a reasonable relation to the cause of action of that proceeding.'" *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 678, 434 P.3d 1275, 1284 (2019), *as amended* (Apr. 22, 2019) (citation omitted). The meaning of "judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *Malmin v. Engler*, 124 Idaho 733, 736, 864 P.2d 179, 182 (Ct. App. 1993). Similarly, "statements to law enforcement officials" enjoy a qualified privilege. *Berian*, 168 Idaho at 404, 483 P.3d at 947.

Here, the district court correctly rejected Ms. Guillard's privilege defense because the statements at issue were not made as part of a judicial proceeding nor were they made to law enforcement, a court, or an official clothed with judicial or quasi-judicial power. Rather, Ms. Guillard's statements were made in over 100

videos posted publicly on TikTok and viewed over a million times by laypersons. 5-SER-812; 5-SER-814-17. As a result, the law enforcement privilege and the judicial privilege do not apply. The district court's decision rejecting those defenses should thus be affirmed.

### F. The district court properly granted partial summary judgment in favor of Professor Scofield.

A district court's decision to grant or partially grant summary judgment is reviewed de novo. *See*, *e.g.*, *Desire*, 986 F.3d at 1259 (grant); *2-Bar Ranch Ltd. P'ship v. United States Forest Serv.*, 996 F.3d 984, 990 (9th Cir. 2021) (partial summary judgment). When reviewing a summary judgment decision, this Court views the evidence in the light most favorable to the nonmoving party and determines whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021); *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

The district court properly granted summary judgment for Professor Scofield as to liability.

#### 1. The district court applied the appropriate legal standard and substantive law.

First, the district court applied the appropriate legal standard, assessing whether, examining the evidence in the light most favorable to Ms. Guillard, there

were any genuine issues of material fact. 2-SER-156 (citing Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). The district court properly placed the initial burden on Professor Scofield to prove the absence of a disputed material fact. 2-SER-156 (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once Professor Scofield met her burden, the district court properly shifted the burden to Ms. Guillard to demonstrate with specific facts, not merely conclusory allegations, the existence of a genuine issue of material fact. 2-SER-156-57 (citing *Anderson*, 477 U.S. at 248–50, 256). It noted that a district court need not accept allegations by the nonmoving party if such allegations are not supported by sufficient evidence, 2-SER-157 (citing *Anderson*, 477 U.S. at 249); *see also Burchett v. Bromps*, 466 F. App'x 605, 606 (9th Cir. 2012) (conclusory evidentiary statements unsupported by factual data do not create triable issue of fact allowing nonmoving party to survive summary judgment), and instead, that "the party opposing summary judgment must go beyond the pleadings to show 'by . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file,' that a genuine dispute of material fact exists," 2-SER-157 (citing *Celotex*, 477 U.S. at 324). As the district court stated, "in the end, the 'party opposing summary judgment must direct [the court's] attention to specific triable facts.'" 2-SER-157 (citing *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003)).

Second, the district court correctly applied Idaho substantive law on defamation. It correctly set forth the elements for a defamation claim: A plaintiff claiming defamation "must prove that the defendant: (i) communicated information concerning the plaintiff to others; (ii) that the information was defamatory; and (iii) that the plaintiff was damaged because of the communication." 2-SER-159 (citing *Clark v. The Spokesman-Rev.*, 144 Idaho 427, 430, 163 P.3d 216, 219 (2007)). The district court properly found that Professor Scofield met her burden to show the absence of a genuine dispute of material fact as to these elements of a defamation claim. 2-SER-161-69. Indeed, it was undisputed that Ms. Guillard posted multiple videos on the TikTok social media platform that communicated information concerning Professor Scofield to others. 2-SER-160 (citing, *inter alia*, Pl.'s Am. SOF ¶¶ 12–17, 19, 25–29, 30, 31, 33 (3-SER-352-55) (citing RFA Nos. 1–2 (3-SER-342-43) (Defendant admitting that she "stated publicly" that Plaintiff murdered four students and that Plaintiff had an affair with one of those students)). Citing the specific TikTok videos, the district court properly found it was undisputed that Ms. Guillard's statements were defamatory: Ms. Guillard repeatedly accused Professor Scofield of masterminding the murder of four students and doing so because she was having a relationship with one of the female victims. 2-SER-160-63. And because Ms. Guillard's statements accused Professor Scofield of a serious crime and imputed to her conduct incompatible with her profession, the district court properly found

that Ms. Guillard's statements were defamatory per se and did not require proof of special damages. 2-SER-163-64. The district court correctly noted that Ms. Guillard did not dispute any of those facts or the applicable law. 2-SER-164.

#### 2. The district court properly applied the correct legal standard to the evidence adduced by the parties on summary judgment.

As she does in her brief on appeal, Ms. Guillard at summary judgment argued that her statements on TikTok were true. Although the district court did not resolve whether it was Professor Scofield's burden to prove the falsity of Ms. Guillard's statements or Ms. Guillard's burden to prove their truth, the district court concluded on the record before it that Professor Scofield had met such a burden, which then required Ms. Guillard to put forward sufficient facts to create a genuine dispute of material fact as to the truthfulness of her statements. The district court properly concluded that Ms. Guillard did not. 2-SER-168-70.

The district court's application of this substantive law to the evidence presented at summary judgment was correct. Professor Scofield put forward abundant evidence that Ms. Guillard's statements—that Professor Scofield orchestrated the students' murders and did so because she was having a relationship with one of them—were false. The district court properly relied on Professor Scofield's sworn declaration that "Defendant's statements are false; (ii) she was never in a romantic relationship with [K.G.]; (iii) she was not involved in the murders of the four University of Idaho students; (iv) she never met any of the

murdered students; (v) she never taught any of the murdered students; (vi) she did not personally know any of the murdered students; and (vii) she was in Portland, Oregon at the time of the murders." 2-SER-168-69 (citing Scofield Decl. ¶¶ 4–12 (3-SER-338)). The district court also relied on subpoena responses from the University of Idaho showing no connection between Professor Scofield and the students, the fact that Professor Scofield was never considered a suspect, and the arrest and charging of a different person. 2-SER-169. The district court concluded that "[t]his is powerful evidence at the summary judgment stage. It not only substantiates Plaintiff's argument that Defendant's statements about her are false, it also highlights the complete lack of any corroborating support for Defendant's statements." 2-SER-169.

The district court then considered the evidence Ms. Guillard put forward in opposition to summary judgment, specifically citing to her opposition memorandum and statement of facts. 2-SER-169-70. It properly concluded that "the *only* support for Defendant's statements about Plaintiff is that Defendant's 'spiritual investigation' into the murders using 'intuitive tarot readings' led her to Plaintiff." 2-SER-170. (emphasis in original). The district court also properly concluded that there is no legal support for the proposition that tarot card readings are grounded in any objectively verifiable facts from which Defendant's testimony can ever be said to be rationally based. 2-SER-170-71. And Ms. Guillard identifies no such legal

support in her appeal. Notably, the district court did not discount or diminish Ms. Guillard's spiritual beliefs. Rather, it properly concluded that "Defendant's psychic intuition, without more, cannot establish a genuine dispute of material fact to oppose Plaintiff's summary judgment efforts." 2-SER-170-71 (citing *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982) (speculative lay witness testimony is insufficient to establish a genuine dispute of material fact); *Gertsch v. Johnson & Johnson, Fin. Corp.*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999) ("'[S]ummary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'")).

In sum, the district court properly determined that Professor Scofield met her burden to show no genuine dispute of material fact that Ms. Guillard's statements were defamatory per se—including that they were false—and that Ms. Guillard did not meet her burden of putting forth any evidence demonstrating the existence of such a genuine dispute of material fact. Ms. Guillard's tarot card readings, psychic intuitions and spiritual beliefs are not facts, regardless of how strongly she asserts that she believed in them.

**3. Ms. Guillard's other assertions of error in the district court's summary judgment decision lack a basis in law, fact or both.**

Ms. Guillard's arguments on appeal do not demonstrate any error in the district court's summary judgment decision. She attempts to cloak her conduct as

exercise of her religion and the district court's summary judgment decision as an infringement on that exercise demonstrating bias against her. All of those arguments, however she classifies them, lack merit.

#### a. The district court's summary judgment decision did not infringe on Ms. Guillard's right to free exercise of religion.

First, her assertion that the district court's summary judgment decision violated her First Amendment free-exercise rights misstates the district court's decision. App. Br. at 14–15. Contrary to Ms. Guillard's argument, the district court did not ever rule that Ms. Guillard could be liable for defamation simply for her spiritual beliefs. Indeed, the district court's order granting summary judgment as to liability offers no opinion regarding the validity of Ms. Guillard's tarot card readings or whether she believed them. The district court remained focused on facts: Professor Scofield presented unrebutted facts showing she was not involved in the murders, that she did not even know the students, and that she had never been engaged in an affair with one of the murdered victims. 2-SER-161-64; 2-SER-168-71. Ms. Guillard put forward no *facts* to the contrary. 2-SER-170-71. Ms. Guillard remained free to engage in tarot card readings, to conduct spiritual investigations, and to assert that she believed them. What she could not do is "act" on those readings without any objective facts behind them by making defamatory statements about Professor Scofield. The district court's plain application of the law to the facts does not infringe on Ms. Guillard's First Amendment rights.

**b. The district court had jurisdiction to rule on a dispositive motion in a civil case; it did not exercise state-court criminal jurisdiction.**

Second, Ms. Guillard's argument that the district court lacked jurisdiction over this federal defamation case because it cannot adjudicate guilt or innocence in a state-court murder case is equally without merit. App. Br. 16-17. The district court did not adjudicate guilt or innocence in a murder, nor did it purport to do so. It entered summary judgment as to liability in a state law defamation case where diversity jurisdiction existed, properly following the applicable standards for those claims.

**c. The district court's summary judgment decision did not demonstrate bias against Ms. Guillard.**

Third, the district court did not demonstrate bias. Ms. Guillard argues that some of the language in the district's court's orders demonstrates that he disregarded her spiritual beliefs and demonstrated bias against her. App. Br. at 21–25. Ms. Guillard's argument is unsupported. The district court in each instance based its findings and conclusions on the facts presented and the applicable law and emphasized that he was doing so. 2-SER-168 (Professor Scofield "has demonstrated that there is no genuine issue of material fact that Defendant's statements are false. Under the summary judgment standard, this would shift the burden to Defendant to show otherwise. . . . Defendant has no such evidence."); *see also* 2-SER-168-70 (reciting facts put forward showing Ms. Guillard's statements are false; emphasizing

the burden shifted to Ms. Guillard, who needed to put forward specific facts; concluding that Ms. Guillard's "spiritual investigation" using "tarot card readings" was not enough to create a genuine dispute of material fact; and explaining that Ms. Guillard's testimony needed to be "based upon personal observation and recollection of concrete facts"). At bottom, Ms. Guillard simply argues that the district court should have accepted her tarot card readings as objective facts. As the district court set forth in its order denying summary judgment, the law provides no support for that position. 2-SER-170-71; *see*, *e.g.*, *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014) ("In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation.").

**d. Ms. Guillard did not raise a privilege defense on summary judgment; if she had, it would have failed.**

Ms. Guillard next argues that summary judgment was not proper because her statements were absolutely privileged or protected by the qualified law enforcement privilege in Idaho. App. Br. at 24–25. But Ms. Guillard did not make such an argument in opposition to Professor Scofield's summary judgment motion. See 3-SER-318-33. A party who does not complain of an issue in the district court ordinarily forfeits her right to review of that issue on appeal. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (citing *Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) ("as a general matter, a litigant must raise all issues and objections" before

the trial court)). Therefore, Ms. Guillard has forfeited any argument that the district court erred in granting summary judgment because her statements were privileged.

Moreover, as set forth above, any argument that Ms. Guillard's statements were absolutely privileged lacks merit. *See* supra V.E. Ms. Guillard's argument that her statements are protected by qualified privilege because they were made to law enforcement also fails. Under Idaho law, a defendant is entitled to qualified immunity when "defamatory statements are made to law enforcement prior to the institution of criminal charges." *Davis v. George & Jesse's Les Schwab Tire Store, Inc.*, 173 Idaho 309, 316, 541 P.3d 667, 674 (2023); *Berian*, 168 Idaho at 403–04, 483 P.3d at 946–47 (statements to law enforcement carry a qualified privilege). It is undisputed that Ms. Guillard published her statements on TikTok weeks before she submitted information to the tip line established for the case. 5-SER-797-99. In short, the defamatory statements at issue in Professor Scofield's complaint were not made to law enforcement. In addition, when Ms. Guillard did contact the FBI tip line, she did not inform them that her "tip" was based on tarot card readings. 5-SER-800-802. And even after providing the FBI with her "tip," she continued to publish her false statements about Professor Scofield on social media platforms. 5-SER-785; 5-SER-787; 5-SER-789-90. The qualified privilege for reporting to law enforcement simply does not apply on these facts, even if Ms. Guillard had not forfeited this issue by failing to raise it at summary judgment.

#### e. Ms. Guillard's disagreement with the district court's order is not a basis for reversal on appeal.

Finally, Ms. Guillard simply disagrees with the district court's order. She disputes that the evidence Professor Scofield put forward meets the elements of a defamation claim but fails to identify any way in which the district court erred in its analysis. App. Br. at 17–19. And although she contends that the district court erred by not making a finding as to damages, she ignores that Professor Scofield's defamation claims involved defamation per se, meaning that damages were presumed. *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1134–35 (D. Idaho 2013). At that point, all that was left was for a jury to determine the amount of those damages.

### G. The district court properly allowed Professor Scofield to amend her complaint to include a request for punitive damages.

This Court reviews de novo the district court's legal conclusion that punitive damages are available. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1013 (9th Cir. 2004) (citing *E.E.O.C. v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 992 (9th Cir. 1998)).

Ms. Guillard argues that the district court erred when it granted Professor Scofield's motion for leave to amend her complaint to include punitive damages. App. Br. at 26–27. She contends that her statements based on her religious beliefs cannot be the bad acts made with bad motivations required under Idaho law. App.

Br. at 26. Her argument misunderstands the district court's order and Idaho law governing punitive damages.[3]

Idaho Code § 6-1604(2) provides that a party may not include a claim for punitive damages in the party's initial complaint and must seek leave from the district court to include a claim for punitive damages. But a district court "shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that[] the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2). Because a moving party need only show a "reasonable likelihood" of establishing entitlement to punitive damages, a court reviews the evidence "in the light most favorable to plaintiffs, with the benefit of all legitimate inferences without assessing credibility." *Est. of Kane v. Epley's Inc.*, No. 3:15-CV-00105-EJL-REB, 2017 WL 1158242, at *4 (D. Idaho Mar. 28, 2017).

Idaho Code § 6-1604(1) provides that to support an award of punitive damages at trial, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1); *see also Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 424, 95 P.3d 34, 42 (2004). Under Idaho

---

[3] A punitive damages claim is substantive in nature, and therefore state law provides the governing legal standard in a diversity jurisdiction case. *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005).

law, this means that to recover punitive damages, a plaintiff must establish both a sufficiently "bad act" and a "bad state of mind." *Hall v. Farmers All. Mut. Ins. Co.*, 145 Idaho 313, 319, 179 P.3d 276, 282 (2008) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)). The "bad act" requirement is established by showing that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Seiniger L. Off., P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 250, 178 P.3d 606, 615 (2008) (citation omitted). The "bad state of mind" requirement is met by proof of "an extremely harmful state of mind" which can be characterized as "malice, oppression, fraud or gross negligence." *Id.* (citation omitted). "In general, the primary purpose behind an award for punitive damages is to deter similar conduct from happening again in the future." *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 221, 923 P.2d 456, 466 (1996).

The district court articulated and applied precisely this standard. 2-SER-157-58, 2-SER-171-73. The district court granted Professor Scofield leave to amend her complaint to include punitive damages in the same order in which it granted summary judgment as to liability. 2-SER-152-73. Having just determined that no genuine dispute of material fact remained regarding Ms. Guillard publishing false, defamatory statements, the district court found that Professor Scofield "has

established a reasonable likelihood of proving by clear and convincing evidence, that [Ms. Guillard's] conduct in accusing [Professor Scofield] of an affair with a student before ordering that student's and three other students' murders was oppressive, fraudulent, malicious and/or outrageous." 2-SER-172. The district court properly found that those false statements were the foundational bad acts needed for a punitive damages claim. 2-SER-172. The district court certainly did not err in that assessment. Looking at the evidence in the light most favorable to Professor Scofield, there was a reasonable likelihood that Professor Scofield could produce evidence of these bad acts. The TikToks and other videos plainly showed Ms. Guillard, and Ms. Guillard admitted making the statements. 2-SER-161-63. And the district court had that evidence before it in the summary judgment pleadings. 2-SER-161-63.

The district court also properly found that Professor Scofield had a reasonable likelihood of proving that Ms. Guillard acted with a bad state of mind. It pointed to evidence that Ms. Guillard never had an objective basis to believe that Professor Scofield did the things that Ms. Guillard "publicly and repeatedly claims she did." 2-SER-172. The district court also cited evidence produced by Professor Scofield at the motion for leave to amend stage that Ms. Guillard continued making statements—and that Ms. Guillard admitted making statements—after Professor Scofield sent cease-and-desist letters, after the Moscow Police Department stated

that Professor Scofield was not a suspect, and after another person was arrested and charged. 2-SER-172 (citing Professor Scofield's statement of facts and exhibits in support of her motion for summary judgment on liability). The district court concluded that "[t]hese circumstances combine to demonstrate that [Ms. Guillard's] social media postings were primarily self-serving, motivated by online viral attention, and made with an extremely harmful state of mind given the nature of the statements about [Professor Scofield]." 2-SER-172-73. In reaching this conclusion, the district court expressly stated that whether Ms. Guillard actually acted with such a harmful state of mind was a question for the jury. 2-SER-173.

The district court did not err. Ms. Guillard's statements show an extreme deviation from reasonable standards of conduct because they were not based on any facts and because Ms. Guillard continued to make them even after she was aware of clear facts showing they were false. *See Seiniger L. Off., P.A.*, 145 Idaho at 249. They were also made by the defendant with disregard for their likely consequences on Professor Scofield. *Id.*

The district court properly granted Professor Scofield's motion for leave to amend her complaint to add punitive damages.

### H. The district court did not abuse its discretion in voir dire.

The district court has broad discretion in how to conduct voir dire, and this Court reviews for abuse of that discretion. *Paine*, 160 F.3d at 564; *Darbin v. Nourse*,

664 F.2d 1109, 1113–14 (9th Cir. 1981). A district court abuses its discretion if it refuses to probe the jury adequately for bias or prejudice about material matters on request of counsel. *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir. 1979). Thus, in determining the adequacy of the voir dire, this Court considers whether the questioning was sufficient to the informed exercise of the defendant's right to challenge prospective jurors. *Darbin*, 664 F.2d at 1114. A district court also abuses its discretion where it refuses to strike a juror challenged for cause where the juror demonstrates actual bias. *United States v. Miguel*, 111 F.3d 666, 673 (9th Cir. 1997); *Tinsley v. Borg*, 895 F.2d 520, 529 (9th Cir. 1990). But such error only occurs if the challenged juror who demonstrates actual bias sits on the jury. *United States v. Mitchell*, 502 F.3d 931, 954 (9th Cir. 2007).

Ms. Guillard argues that the district court erred in voir dire: (1) by not excusing for cause Juror No. 5, and (2) by not excusing for cause Juror No. 13. App. Br. at 27–30. Ms. Guillard exercised her three peremptory challenges against other jurors whom she did not challenge for cause. She did not use a peremptory challenge to strike either Juror No. 5 or Juror No. 13. 6-SER-960.

**1. The district court did not abuse its discretion by denying Ms. Guillard's motion to dismiss Juror No. 5.**

Ms. Guillard argues that the district court should have granted her motion to dismiss Juror No. 5 for cause because Juror No. 5 knew and had worked with counsel for Professor Scofield. App. Br. at 30. This argument fails from the outset

for two reasons. First, Juror No. 5, although initially seated, did not deliberate on the verdict. He was excused on the third day of trial. 5-SER-838-39. Because Juror No. 5 did not deliberate on the verdict, no error could have occurred. *Mitchell*, 502 F.3d at 954. Second, after the district court questioned Juror No. 5 at sidebar and heard his responses, Ms. Guillard withdrew her objection to Juror No. 5. 6-SER-957.

Ms. Guillard's argument also ignores that Juror No. 5 said he could be fair when he was questioned at sidebar outside the presence of other venire members, 6-SER-941; 6-SER-956-57, and that Ms. Guillard did not use a peremptory challenge against Juror No. 5. 5-SER-831. Ms. Guillard later explained she did not exercise a peremptory challenge against Juror No. 5 because when he said he could be fair, she believed him. 5-SER-836.

Ms. Guillard asserts that although Juror No. 5 was excused during trial, "the damage was already done." App. Br. at 30. This unsupported argument ignores the district court's inquiry of Juror No. 5 and Juror No. 5's responses at the time he was excused. Juror No. 5's note expressed concern that Ms. Guillard would act against jurors in a manner like her conduct toward Professor Scofield if the jury awarded Professor Scofield a substantial damages award. 5-SER-828. When the district court questioned Juror No. 5, outside of the presence of the other jurors, the district court inquired of Juror No. 5 whether he had followed the court's instruction not to discuss the case with the other jurors, whether he had shared the concerns expressed in his

note to other jurors, and whether he had made up his mind on the case or would consider additional evidence. 5-SER-829; 5-SER-833-34. Juror No. 5 affirmed that he had followed the district court's instruction not to discuss the case with others, that he had not shared the concerns in his note with others, and that he had not made up his mind and would continue to be fair and impartial. 5-SER-833-34. No evidence in the record supports Ms. Guillard's assertion that the damage was already done or that Juror No. 5 displayed bias.

Moreover, no evidence supports Ms. Guillard's assertion that the district court "lied to the Court and Jury by saying that Juror #5 was excused due to a family emergency." App. Br. at 30. The parties, including Ms. Guillard, and the district court discussed what they should tell the other jurors after Juror No. 5 was excused. 5-SER-840-841. Ms. Guillard told the district court she had no objection to the district court's proposal. 5-SER-841. Nor do any facts support Ms. Guillard's argument that Juror No. 5 demonstrated any bias. App. Br. at 30. Juror No. 5 repeatedly stated he could be fair, that he had not made up his mind, even at the time he was excused. 6-SER-956; 5-SER-833-34; 5-SER-835.

On this record, the district court did not abuse its discretion when it denied Ms. Guillard's motion to strike Juror No. 5 for cause. The district court and the parties asked Juror No. 5 sufficient questions to determine whether he had any bias, particularly regarding his and his employer's relationship with Professor Scofield's

counsel. *Darbin*, 664 F.2d at 1114. And the record does not show actual bias. *Miguel*, 111 F.3d at 673; *Tinsley*, 895 F.2d at 529. Juror No. 5's answers to the district court's questions demonstrated that he could be fair and that he had an open mind and would listen to the evidence.

**2. The district court did not abuse its discretion by denying Ms. Guillard's motion to dismiss Juror No. 13.**

Ms. Guillard next argues that the district court should have granted her motion to dismiss Juror No. 13 for cause because Juror No. 13 was biased against Ms. Guillard based on her religious beliefs. App. Br. at 27–30. The record demonstrates that Juror No. 13 did not demonstrate actual bias. During the bench conference to discuss Juror No. 13, Ms. Guillard incorrectly stated that Juror No. 13 had called her a witch. 6-SER-947. Although Juror No. 13 stated that she did not believe in witchcraft, when the district court made clear that the jury was only deciding damages, Juror No. 13 said that would not interfere with her ability to be impartial on that question. 6-SER-944; 6-SER-947-48.

The district court specifically informed Ms. Guillard that she could exercise a peremptory challenge as to Juror No. 13. 6-SER-948; 6-SER-950. But Ms. Guillard chose not to. 5-SER-847:21-48:2; 5-SER-849:9-19. She instead challenged three other jurors. 6-SER-960.

On this record, the district court did not abuse its discretion when it denied Ms. Guillard's motion to dismiss Juror No. 13 for cause. The district court explained

to Juror No. 13 that the case would not be about whether psychic abilities were valid or invalid, but rather, the jurors were only going to make determinations regarding damages, and Juror No. 13 said she could be impartial on that question. 6-SER-944. The district court's questions were sufficient for Ms. Guillard to determine Juror No. 13's potential bias, and Juror No. 13's responses demonstrated that she did not have any actual bias for the task the jury would perform—assessing damages.

That Ms. Guillard failed to exercise a peremptory challenge on Juror No. 13 further undermines any assertion of error. At the time she exercised her peremptory challenges, Ms. Guillard apparently did not believe that Juror No. 13 was so obviously biased as to warrant exercise of a peremptory challenge. *See Skilling v. United States*, 561 U.S. 358, 397 n.32 (2010) (noting that at trial, Skilling's counsel did not find the juror complained of on appeal "so obviously biased" as to warrant exercise of a peremptory challenge (citation modified)).

The district court did not abuse its discretion in denying Ms. Guillard's motions to strike Juror No. 5 or Juror No. 13 for cause.

## I. The district court properly awarded attorney's fees to Professor Scofield.

A district court's award of attorney fees is generally reviewed for abuse of discretion. *G.P.P., Inc. v. Guardian Protection Products, Inc.*, 126 F.4th 1367, 1374 (9th Cir. 2025). This principle applies broadly to fee awards, including those calculated under state law. *Id.* A district court abuses its discretion if its fee award is

based on an inaccurate view of the law or a clearly erroneous finding of fact. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

The district court did not abuse its discretion in this award of attorney fees. Both Idaho Code § 12-121 and Ninth Circuit caselaw authorize the award of attorney fees where a party pursues a case frivolously, vexatiously, or without foundation. I.C. § 12-121; *Safeco Ins. Co. of Ill. v. LSP Prods. Grp., Inc.*, 659 F. Supp. 3d 1131, 1138–39 (D. Idaho 2023). Thus, the district court's view of the law was accurate.

The district court awarded Professor Scofield $27,699.00, a small amount of the attorney's fees that she had incurred. 2-SER-23-24. The district court determined that an award of fees was appropriate because Ms. Guillard, throughout the litigation, had insisted that her statements about Professor Scofield "were true, despite the absence of any admissible evidence supporting them," and because Ms. Guillard's unsupported premise was accompanied by litigation conduct that caused Professor Scofield to respond to repetitive motions, delayed the case, and increased the cost of the litigation. 2-SER-22; 2-SER-25. Notably, the district court did not award Professor Scofield fees for attorney work on motions for which the district court had denied attorney fees as a sanction or for the jury trial itself. 2-SER-23.

Ms. Guillard argues on appeal only that the district court erred when it attributed her motions for reconsideration to "bad faith." App. Br. at 30. Without citing any part of the record or any caselaw, she asserts that her Rule 60 motion for

reconsideration was necessary to correct legal errors and preserve matters for appeal. App. Br. 30. Ms. Guillard's argument ignores that the district court's attorney fees award was based not on a single motion but on the record as a whole. She made false statements that Professor Scofield orchestrated the murder of four students and that Professor Scofield did so because she was having an affair with one of them. Despite undisputed evidence to the contrary, she maintained that position throughout the litigation and repeated in her pleadings that Professor Scofield was responsible for the murders. *See*, *e.g.*, 4-SER-567 ("Rebecca Scofield initiated the lawsuit with full knowledge that she was responsible for the death of the four students and with the intent to harass, embarrass, humiliate, and discredit Ashley Guillard[.]").

The docket is likewise replete with Ms. Guillard's actions that delayed the litigation and increased costs. For example, Ms. Guillard initially failed to answer within the time limit established by rule, and the district court clerk entered default. 4-SER-720. Only then did Ms. Guillard file her answer, counterclaims, and request relief from default judgment. 4-SER-689-719. Although the district court allowed Ms. Guillard's late-filed answer, 4-SER-674-84, the district court also granted Professor Scofield's motion to dismiss Ms. Guillard's counterclaims—including patently frivolous counterclaims against Professor Scofield's counsel, 3-SER-445-67. Although Ms. Guillard consented to have this case heard by a magistrate judge of the district court, 4-SER-685, once the district court ruled against her, she

repeatedly challenged those decisions, sought reconsideration, filed objections, or sought to have a different judge, including an Article III district court judge, be assigned to the matter. *See*, *e.g.*, 2-SER-50-62; 2-SER-83-85; 2-SER-125; 2-SER-135-37; 2-SER-151; 3-SER-442-44. Each of these motions not only required Professor Scofield to incur additional attorney's fees and costs to oppose these motions, *see* 2-SER-70-82; 2-SER-110-24; 2-SER-126-34; 3-SER-399-411, but they also significantly delayed the ultimate resolution of the case. Indeed, it took five months for the Article III judge to resolve and deny Ms. Guillard's motion for reassignment to an Article III district court judge. 2-SER-102-09.

Ms. Guillard also engaged in a last-ditch effort to delay or deny to Professor Scofield her long-awaited trial on damages by filing a third motion to dismiss for lack of diversity jurisdiction, 2-SER-47-49; *see also* 3-SER-365-88; 2-SER-86-101, and a last-minute motion to continue, 2-SER-45-46.

On this record, the district court properly determined that Ms. Guillard had litigated the case frivolously, unreasonably and without foundation—all of which was indicative of bad faith. 2-SER-22. This Court should affirm the district court's award of attorney fees.

## VI. CONCLUSION

This Court should affirm the judgment.

DATED: September 28, 2026

STOEL RIVES LLP

*/s/ Wendy J. Olson*

Wendy J. Olson
Cory M. Carone

*Attorneys for Appellee Rebecca Scofield*

## CERTIFICATE OF COMPLIANCE

9th Circuit Case No.: 26-2190

I am the attorney representing Appellee.

**This brief contains 12,015 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

September 28, 2026.

*/s/ Wendy J. Olson*
Wendy J. Olson

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals of the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Wendy J. Olson*
Wendy J. Olson