No. 26-2190
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ASHLEY GUILLARD
Appellant
v.
REBECCA SCOFIELD
Appellee

---

On Appeal From The United States District Court For The District of Idaho
Case No. 22-CV-521-REP
Chief U.S. Magistrate Judge Raymond E. Patricco

APPELLANT'S PRO-SE REPLY BRIEF

Ashley Guillard
Pro-Se Appellant
3262 Westheimer Rd 942
Houston Texas 77098
337.372.3181
msashleyjt@gmail.com

## I. REPLY TO APPELLEE JURISIDICTIONAL STATEMENT

Rebecca Scofield (Scofield) stated that *Ms. Guillard's defamatory statements damaged Professor Scofield's professional reputation, caused Professor Scofield to suffer emotional distress, and caused Professor Scofield to incur costs to purchase a security system and camera for her home. 4-SER-722; 4-SER-728.*[1] The entire statement is false. First, Scofield did not suffer harm to her professional reputation.

[1] See Case: 26-2190, 09/28/2026, Dkt Entry: 11.1, (11 of 63)

She was promoted at work and received several pay increases.[2] Scofield was not investigated at work because University of Idaho (UI) did not believe Guillard's allegations about Scofield.[3] Scofield was not investigated by Law Enforcement because MPD did not believe Guillard's allegations about Scofield. MPD wrote a statement on Scofield's behalf.[4] Additionally she admitted that she did not suffer financial harm in her publications.[5] Second, it is impossible for Scofield's improper diagnosis of Post Traumatic Stress Disorder (PTSD) to be caused by Guillard: 1) It impossible for Scofield to get post-traumatic stress disorder from defamatory statements; defamation is not a traumatic event. It does not meet the diagnostic criteria of exposure to actual or threatened death, serious injury, or sexual violence pursuant to the Diagnostic And Statistical Manual Of Mental Disorders (DSM-5).[6] 2) Pursuant to the American Psychiatric Association, Scofield cannot get PTSD from electronic media or Tik-Tok videos. 3) Pursuant to ID Code § 72-451 (2025), Scofield's PTSD diagnosis is not a proper medical diagnosis and does not meet the criteria for compensation because it was not diagnosed by a licensed psychologist or psychiatrist according to DSM criteria. 4) The psychotherapist who diagnosed Rebecca Scofield with PTSD also testified that Guillard did not cause Scofield to

[2] See Tr. 345:13-354:12. Testimony of Quinlan
[3] See Tr. 327:3-8 Testimony of Rytter
[4] See DKT. 117 Exhibit C MPD letter
[5] See Tr. 128:13- 134:25 Testimony of Rebecca Scofield
[6] See Defendants Exhibit No 501

have PTSD, repeatedly changed her testimony about which diagnostic criteria she used to diagnose Scofield with PTSD, falsely claimed that Guillard physically killed Scofield, and admitted that Scofield's PTSD diagnosis was self-assessed.[7] 5) The approximate $6000 in medical bills Scofield fraudulently provided as evidence for emotional damage were for physical therapy for her nerve damage. There is no medical evidence to support that Scofield's nerve damage is due to Guillard's TikTok videos and not Scofield's other health issues (hysterectomy, diabetes, fibroids etc.).[8] Third, Scofield's alleged purchase of a security system and camera for her home was after she allegedly got an email from an unknown party with no known connection to Guillard. No evidence, aside from hearsay (which isn't evidence), was provided that the email exists. Nor was any evidence provided that the alleged sender of the alleged email had any connection to Guillard.[9]

Rebecca Scofield falsely testified and fraudulently claimed damages. The evidence proves Guillard did not cause Scofield any financial harm. Instead Scofield falsely claimed 2 million dollars in damages. At the time of the filing of the complaint and the summary judgment Scofield did not have $75,000 in damages to her career, physical nor mental health, nor did she suffer $75,000 in damages to her

---

[7] See Tr. 408-465 Rebecca Bohn Testimony
[8] See DKT. 153, trial exhibits 31-36, Tr. 580 Margie Scofield testimony
[9] See Testimony Tallent, Carlsen, Hanson, Margie Scofield, Rebecca Scofield

reputation. Scofield cannot obtain jurisdiction by false testimony of damages that do not exist.[10]

## II. REPLY TO APPELLEE STATEMENT OF THE CASE

First, Guillard did not capitalize on public interest in the murders. Guillard used her gift of divination to help solve the murders for free; no one paid her, Tik-Tok did not pay her. Second, Guillard used tarot and oracle cards to get answers and did not follow "popular online stories". Third, before the homicides Guillard already had a following and viral videos. There is no evidence that hashtags increase viewership. Scofield admits that the story was already popular without Guillard. Tik-Tok's algorithm determines what videos go viral. Guillard does not claim knowledge of how Tik-Tok operates and how Tik-Tok chooses what content to push. Fourth, Scofield states *in an effort "to get everyone stable and protected," Professor Scofield decided to send Ms. Guillard a cease-and-desist letter.* However, there is no evidence to suggest that Scofield was ever unstable and unprotected. That's another false claim.

## III. REPLY TO APPELLEE'S ARGUMENT

### A. The Court should not strike Ms. Guillard's informal opening brief because it complies with Ninth Circuit's Pro-se Informal Brief Template.

[10] See DKT 153, DKT. 159

Scofield states that *Ms. Guillard's opening brief fails to comply with the basic requirements of the Federal Rules of Appellate Procedure and this Court's rules*. Guillard disagrees. In the U.S. Court of Appeals for the Ninth Circuit, pro se appellants and petitioners may use the court's informal opening brief forms instead of following formal brief-writing rules under Federal Rule of Appellate Procedure (FRAP) 28(a) and FRAP 32. As a pro-se litigant Guillard filed an informal opening brief the best way she could. If anything else was required Guillard will willingly file an amended opening brief.

**B. The district court did not have subject matter jurisdiction.**

Guillard incorporates by reference "REPLY TO APPELLEE JURISIDICTIONAL STATEMENT". Additionally, the 'legal certainty' test pursuant to Naffe, 789 F.3d at 1039, independent facts, show that the amount of damages was claimed merely to obtain federal court jurisdiction. 1) It is an independent fact from the Diagnostic And Statistical Manual Of Mental Disorders (DSM-5) and the American Psychiatric Association (APA) that Scofield cannot get PTSD from electronic media, that defamation via a Tik-Tok video is not a traumatic event based on the DSM-5 and that prevents a proper PTSD diagnosis based on the facts detailed by the DSM-5 and APA. 2) It is an independent fact Scofield's approximate $6000 in medical bills for physical therapy and nerve damage does not amount to $75,000. 3) It is an independent fact that Scofield was promoted at work

and did not lose compensation. 4) It is an independent fact that Scofield was not investigated at work nor by MPD. 5) It is an independent fact that spending approximately $400 on a security camera does not amount to $75,000. Scofield's initial motion for *at least $1,863,*304 falsely claimed *Scofield's promotions, leadership capabilities, and salary increases at the University of Idaho to be jeopardized.*[11] It is a fact that Scofield falsely testified about losing promotions, leadership opportunities and salary increases according to the testimony of her witness and boss at the University of Idaho, Sean Quinlan.[12] It is very obvious that the amount of damages was claimed merely to obtain federal court jurisdiction.

**C. The district court abused its discretion in voir dire.**

First, Scofield argues that Juror #5 did not deliberate on the verdict. This is false. Juror #5 wrote a letter to Judge Patricco, that stated there would be a large judgment in favor of the Plaintiff on the third day of trial.[13] The letter was written before Guillard presented her case and before Juror #5 was excused. The next day the jury did render a large verdict of 10 million dollars in favor of the Plaintiff. Juror #5's letter proves that before official deliberations began there was verdict-based conversations. Therefore it is likely that Juror #5 impacted the Jury and verdict before being excused. Second, Juror #5 and his firm was currently working with

[11] See DKT. 10.
[12] See Tr. 345-354 Sean Quinlin testimony.
[13] See jury notes.

Stoel Rives, LLP on another case during the time of trial. Additionally, Juror #5 and Scofield's Attorney. Wendy J. Olson worked together on cases in the past. Third, Guillard did not withdraw her objection to Juror No. 5 at sidebar. At sidebar after Juror no. 5 lied about being fair despite working with Wendy Olson and Stoel Rives, LLP. Judge Patricco asked Guillard if she had any further questions. Guillard said no. Judge Patricco asked Guillard if she withdrew her motion to excuse him for cause. Guillard said no. Guillard never withdrew her objection to Juror No. 5. Instead, Judge Raymond E. Patricco denied Guillard's objection to Juror No. 5. For some odd reason, the Court Reporter, Anne Bowline, recorded that the Court asked Guillard, *So do you still have a motion to excuse him for cause?* With Guillard answering no, instead of recording Judge Raymond E. Patricco denying Guillard's objection to Juror No. 5. Guillard requested the audio of voir dire. The Court Reporter Anne Bowline stated there are no audio recordings of the voir dire.[14] Guillard intends to file a motion to amend the transcript to have this critical error corrected. Fourth, Scofield states that Ms. Guillard later explained she did not exercise a peremptory challenge against Juror No. 5 because when he said he could be fair, she believed him. 5-SER-836. This is false. Guillard did not explain her use of the peremptory challenges because an explanation was not required. Guillard used her peremptory challenges mostly on University of Idaho stakeholders who were

[14] The email supporting this statement will be provided with the motion to alter/amend trial transcript.

members of the Jury pool. Guillard did not use a peremptory challenge on Juror No. 5 because Judge Patricco allowed him to stay and Guillard intended to hold the Court accountable for that bad decision.

Scofield states that Juror No. 13 did not demonstrate actual bias. This is false. Juror No. 13 referred to Guillard's spiritual practice of tarot and oracle card readings as "witchcraft" stating *I, as a Catholic, don't believe in witchcraft and none of that psychic medium stuff, so it would be hard for me to believe what she's putting out there.* This demonstrates religious bias. Additionally, the Court denied Guillard's motion to strike Juror No. 13 because Judge Patricco stated the trial was *just about damages in this case* completely ignoring that malice and intent is a factor in awarding punitive damages. Guillard questioned Juror No. 13's ability to accept that Guillard believes in psychic messages and based her actions on the belief that the messages are true. Juror No. 13 specifically stated that because Juror No. 5 is a Catholic it would be hard for her to believe Guillard. Solely based on her religion of being a Catholic. That is religious bias. Guillard did not use a peremptory challenge on Juror No. 13 because Judge Patricco allowed her to stay and Guillard intended to hold him accountable for that bad decision.

### D. The district court erroneously awarded attorney's fees to Professor Scofield.

Guillard disagrees with the allegation that *Ms. Guillard's unsupported premise was accompanied by litigation conduct that caused Professor Scofield to*

*respond to repetitive motions, delayed the case, and increased the cost of the litigation.* More than 90% of the docket is motions filed by Scofield. The motions Guillard filed were to preserve issues on appeal and to defend herself. Additionally, Guillard motion rescinding Magistrate jurisdiction was genuinely because she believed Judge Raymond E. Patricco was biased and made questionable decisions that negatively impacted her. For example, Patricco referred to Guillard's spiritual practices as clearly baseless and implausible.[15] When Guillard provided examples of her spiritual messages being correct Patricco called it "*happenstance*".[16] Patricco granted Scofield's Summary Judgment Motion despite Scofield's lack of meeting all elements of a defamation claim.[17] Patricco denied nearly all of Guillard's motions. Patricco allowed Juror No. 5 to be on the jury despite of his current and history of working with the Plaintiff's Attorney Wendy Olson and Firm Stoel Rives, LLP. Patricco allowed Juror No. 13 to be on the jury after she exposed herself for: 1) having religious bias; 2) having prior knowledge and feelings about Guillard and the case; 3) seeing or reading news articles about Guillard during the trial; 4) after Guillard exposed Juror No. 13 for making positive gestures to the Plaintiff during trial. Patricco ordered that fraud on the Court by the Plaintiff is allowed.[18] Guillard's motions for reconsideration and motions for a district judge were to prevent the need

---

[15] DKT. 49 pg.9.
[16] DKT. 96 pg. 6
[17] DKT. 92
[18] DKT. 169

for an appeal by having a fair trial.[19] Instead, Patricco abused his discretion by punishing Guillard with a judgment for attorney's fees favorable to the Plaintiff because she requested reconsideration of his orders and requested a fair judge.

## IV. CONCLUSION

This Court should reverse the judgment, overturn the lower court's decisions and dismiss the Complaint due to fraud.

DATED: November 18, 2026

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

[19] DKT. 117, DKT. 142, DKT. 153, DKT 96, DKT. 97

## CERTIFICATE OF COMPLIANCE

9th Circuit Case No.: 26-2190

I am a pro-se litigant representing myself Appellant Ashley Guillard. This brief contains 2,215 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

DATED: November 18, 2026

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2026, I served a copy of the foregoing via CM/ECF on the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com; Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: November 18, 2026.

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant